(28 App. Div. 334.)

## FIRE DEPARTMENT OF CITY OF NEW YORK v. STANTON.

(Supreme Court, Appellate Division, First Department. April 22, 1898.)

1. INSURANCE—SUPPORT OF FIRE DEPARTMENT—PERCENTAGE ON PREMIUMS.
   The provision of Consol. Act, § 523, that a certain percentage on premiums received shall be paid to the fire department in each year "by every person who shall act in the city and county of New York as agent for  *  *  * any individual or association  *  *  * not incorporated by the laws of this state, to effect insurances against losses  *  *  * by fire," imposes the liability upon all such agents, irrespective of whether the association is composed of residents, or nonresidents, or both.

2. SAME—CONSTITUTIONAL LAW.
   Thus construed, it is entirely uniform and equal in its operation, and not open to objection on constitutional grounds, as creating any discrimination against individuals in favor of domestic corporations.

3. SAME—CORPORATIONS.—CITIZENSHIP.
   While corporations may be "persons," within the fourteenth amendment, they are not "citizens," within the meaning of that or any other clause of the constitution.

4. SAME—CONSTITUTIONAL LAW.
   If the statute had imposed the liability only in case the association were composed of residents of other states, it would have been invalid, under Const. U. S. art. 4, § 2.

5. SAME.
   The legislature is competent to designate who may effect insurances, to tax corporations in one way and individuals in another, and may even exercise this latter function with a view to encouraging corporate organization.

6. SAME—ACTION TO COLLECT PERCENTAGE.
   The right of the fire department, conferred by Consol. Act, § 530 (Laws 1892, c. 703, § 465), to maintain an action to collect from agents of fire associations, not incorporated in New York, the amount fixed by Consol. Act, § 523, is not qualified by section 518, subd. 7, which relates only to the application of the tax when received or recovered.

Appeal from special term.

Action by the fire department of the city of New York against George A. Stanton. From a judgment dismissing the complaint on the merits, with costs, plaintiff appeals. Reversed.

The defendant is the general manager of an unincorporated association of underwriters doing business in the city of New York as insurers against loss and damage by fire, under the name of the "American Lloyds." The action is brought under the provisions of section 523 of the New York City consolidation act, which reads as follows:

"There shall be paid to the treasurer of the fire department, for the use and benefit of said fire department, on the 1st day of February in each year, by every person who shall act in the city and county of New York as agent for or on behalf of any individual or association of individuals not incorporated by the laws of this state, to effect insurance against losses or injury by fire in the city and county of New York, although such individuals or association may be incorporated for that purpose by any other state or country, the sum of two

-dollars upon the hundred dollars, and at that rate upon the amount of all premiums which, during the year ending on the next preceding 1st day of September, shall have been received by such agent or person or received by any other person for him, or shall have been agreed to be paid for any insurance against loss or injury by fire in the city, effected or agreed to be effected, or promised by him as such agent."

The plaintiff seeks to charge the defendant under this act as the agent of the unincorporated association in question. The defendant insists that the section in question is not applicable to him as agent of this particular association.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY, PATTERSON, and O'BRIEN, JJ.

William L. Findley, for appellant.
William B. Ellison, for respondent.

BARRETT, J. It may be conceded at the outset that the mischief aimed at in the legislation under consideration was frankly set forth in the preamble to chapter 277 of the Laws of 1824. That preamble reads as follows:

"Whereas, it is represented to the legislature that associations or companies of individuals resident without this state and not incorporated by its laws, do nevertheless, by means of agents appointed by them in this state, effect many insurances therein against losses by fire, thereby securing to themselves all the benefits without being subject to any of the burdens of insurance companies regularly incorporated by the laws of this state: therefore be it enacted," etc.

The central idea embodied in this preamble runs through all the subsequent acts. 1 Rev. St. p. 714; Laws 1837, c. 30; Laws 1849, c. 178; Laws 1857, c. 548; Laws 1866, c. 825; Laws 1875, c. 465; Laws 1882, c. 410. Thus, these acts are frequently entitled "Acts in relation to insurances on property in this state made by individuals and associations unauthorized by law." This formula is occasionally varied, as in the Revised Statutes, where the title reads, "Of insurances on property in this state made in foreign countries and by individuals and associations unauthorized by law;" and, as in the act of 1866, by the expression, "An act in relation to the payment of taxes by insurance companies of other states and countries and their agents." The words "unauthorized by law," whenever they thus occur, do not mean "prohibited by law." They simply refer to acts which are not done under direct statutory authority. All these statutes are aimed, not only at the objectionable end, but specially at the means resorted to for its accomplishment. Thus we find that the legislation is directed throughout at the local agents here of foreign corporations or associations. The original policy of the legislature was to exclude all corporations organized in foreign countries, and, indeed, all foreigners, from the business of fire insurance in this state, whether transacted personally or through local agents. Laws 1814, c. 49. This extreme inhibition was impliedly modified by the act of 1837 (chapter 30), and was entirely abrogated by the act of 1849 (chapter 308). This latter act seems to be the first express authorization to companies incorporated abroad to transact insurance business in this state. A different policy, however, prevailed as to corporations and associations organized in other states of the Union. This was indicated in Act

1824, c. 277. But even there it was obviously the intention not to permit these bodies, by reason of their corporate existence outside of the state, to obtain an advantage on that account over our own domestic corporations.

The method which was generally resorted to by foreign corporations, attempting to do an insurance business in this state, was to appoint local agents to transact the business for them. That was, as we have said, the particular means to which the attention of the legislature was specially called. It evidently was not believed that nonresident principals, whether corporate or unincorporate, were likely to come here and transact their business in person without seeking incorporation under our laws. It was practically essential that they should act through local agents, and the legislature was doubtless aware of this fact. Consequently the legislation on the subject was unvaryingly directed to these agents. Individual nonresident principals, other than foreigners, were left free to come and transact the business here without being subjected to the tax. It was only when they resorted to an agent for its transaction that the legislation applied, and then it applied only to the agent. The act under consideration is the culmination of all the preceding acts relating to the same subject. It should be read in the light of this continuous legislation, of the purpose throughout, and of the legislative means adopted to enforce that purpose. What, then, do we find? A statute imposing the tax upon "every person who shall act in the city and county of New York as agent for, or on behalf of, any individual or association of individuals not incorporated by the laws of this state to effect insurances, * * * although such individuals or association may be incorporated for that purpose by any other state or country." Reading this language literally, the tax is clearly imposed upon agents for all individuals or associations of individuals not incorporated by the laws of this state. This necessarily covers residents as well as nonresidents. It is the agent of any individual or association of individuals who is required to pay the tax. We are asked by the defendant to deny to this language its literal import, and to read it according to a supposed legislative intention to impose the tax only upon the agents of nonresidents or foreign associations. The people aimed at, contends the defendant, were these nonresidents, and consequently the enactment should be deemed to cover them, and them only. The inherent fallacy of this construction is that it imputes to the legislature an unconstitutional intent. The constitution of the United States guaranties to citizens of each state all privileges and immunities of citizens of the several states. Const. art. 4, § 2. The legislature had this constitutional provision before it when the various acts, commencing in 1824 and running down to 1882, were passed. The courts do not impute to the legislature, if it can reasonably be avoided, an unconstitutional intent. Why, then, should we deny to the language of this act its literal import? When thus read, it embraces all agents,—the agents of residents as well as of nonresidents,—and is consequently constitutional. And why should we ascribe to the legislature an intention to exclude our own citizens from the operation of the act when such exclusion would, by rendering the law unconstitutional, frustrate the legislative

purpose? The mischief was, it is true, clearly expressed in the preamble of the act of 1824, as was also the means whereby the mischief was being accomplished. It by no means follows, however, that the enactment was limited to the specified means. It was directed at the end, and at every phase of the means whereby the end could be accomplished. What we should expect to follow such a preamble would be an enactment adopted to efficiently cope with the evil. The problem was to check or modify the evil. That was recited, and then followed what was intended to be an efficient exercise of power to put a stop to or diminish it. This could only be done constitutionally, in the manner devised, by putting the proposed tax burden upon the agents of residents as well as of nonresidents, and so the burden was imposed in general terms upon all. This left all citizens, nonresident as well as resident, free to transact the business as principals without the imposition of the burden upon any of them. It was only when they attempted to transact the business by means of agents that the burden was imposed, and the burden was then imposed upon the agents. No discrimination is made in this respect between agents appointed by residents or by nonresidents, or by a combination of both. This was a well-devised scheme, practically adapted to put a stop to the conduct recited in the preamble. Resident citizens have not, in general, the same need of local agents as nonresidents. They can usually transact their own business here without resorting to such means. It is different with nonresidents. They are generally compelled, under such circumstances, to resort to local agents. It may have been for this reason that the legislature directed its measure to the agents rather than to the principals. The legislature may well have thought that the act would but rarely address itself in practice to resident citizens. But that consideration does not affect the proper construction to be given to the language used. It is enough to say that that language covered resident citizens, in case they chose to transact the business here through agents.

Apart from the rule that an unconstitutional purpose should not be attributed to legislation, if, upon any reasonable construction, it admits of a constitutional purpose, we have here the additional consideration that some of the principals are residents and others nonresidents. The act certainly contemplates no distinction on that head. The agent may be appointed by residents or by nonresidents, or by a combination of both, and yet he must pay the tax. The essential thing is that neither the residents nor the nonresidents, nor the combination of the two, are incorporated under the laws of this state. The law was intended to bear alike on all who are not thus incorporated. It is obvious that any other construction would lead to easy and successful evasion of the act. It would only be necessary to resort to the simple device of associating one or more residents with the nonresident principals.

The reasoning in the cases of Fire Department v. Noble, 3 E. D. Smith, 440, and Fire Department v. Wright, Id. 453 (which latter case was subsequently affirmed in the court of appeals), is quite in point. In these cases the defendants were agents of foreign corporations, and the question arose under a different section from that now under con-

sideration. The discussion, however, covered the general field, and all the statutes were referred to. The point was there taken that the act was unconstitutional because it makes a distinction between, the citizens of this state and those of other states. The court held that the objection was without foundation. "The operation of the article," said Judge Ingraham, "is not confined to foreign corporations or individuals of other states. * * * These statutes apply equally to the citizens of this state as of others, to insurers in this state as well as in others, in fact to everybody who acts as agent for any individual or corporation in effecting insurance, except for corporations organized under the laws of this state." This reasoning is entirely in accord with our present views, and it supports our conclusion that the defendant is clearly within the act.

The defendant, however, contends that upon this construction the act is unconstitutional in another direction, viz. that it is a discrimination against resident individuals in favor of domestic corporations. There is nothing in this point. Corporations may be "persons" within the fourteenth amendment to the constitution of the United States, and as such within the provision that no state shall deprive any person of life, liberty, or property without due process of law, or deny to any person within its jurisdiction the equal protection of the law. They are not, however, "citizens," within the meaning of this or any other clause in the constitution. Pembina Consolidated Silver Mining & Milling Co. v. Pennsylvania, 125 U. S. 181, 8 Sup. Ct. 737. The tax here is entirely uniform and equal in its application. It is imposed upon all persons who, to effect insurances, act as agents for any individual or association of individuals not incorporated by the laws of this state. That satisfies every constitutional requirement. It is well settled that the legislature is authorized to regulate the business of fire insurance in this state (Board v. Whipple, 2 App. Div. 361, 37 N. Y. Supp. 712); and in doing so it may adopt such measures with regard to that business as in its judgment will best promote the public interest. The legislature is competent to designate who may effect insurances, to prohibit agencies therefor, and to impose the payment of a tax as the condition of the establishment of such agencies. Fire Department v. Noble, supra. It may, as indeed it does, tax corporations in one way; individuals in another. And it may even exercise this latter function with a view to encouraging corporate organization as the most easily reached subject upon which to impose its power of regulation. Our conclusion, therefore, is that the act in question is constitutional, and that the defendant is within its mandate.

The only other point to which we need refer is that which questions the right of the fire department to maintain this action. This right is given by the statute in terms. Laws 1882, c. 410, § 530; Laws 1892, c. 703, § 465. The defendant relies upon section 518, subd. 7, c. 410, Laws 1882. But this latter provision simply relates to the proper application of the tax when received or recovered. The right of action is not affected thereby.

It follows that the judgment should be reversed, and a new trial ordered, with costs to the appellant to abide the event. All concur.