NEW YORK BOARD OF FIRE UNDERWRITERS v. WHIPPLE et al.
(No. 208.)

(Supreme Court, Appellate Division, First Department. March 6, 1896.)

1. CONSTITUTIONAL LAW—TITLE OF ACT.
    Chapter 846 of the Laws of 1867, entitled "An act to incorporate the New York Board of Fire Underwriters," and giving power to the corpora-

tion to create a fire patrol, is constitutional, such right being germane to the title of the act.

2. SAME—POLICE POWER.
   Chapter 846 of the Laws of 1867, incorporating the New York Board of Fire Underwriters, and authorizing it to levy a tax on premiums received by persons engaging in insurance business in the city of New York, is constitutional, as a proper exercise of the police power.

Appeal from special term, New York county.

Action by the New York Board of Fire Underwriters against Whipple & Company, as chief executive officers of the North & South American Lloyds. From an order overruling a demurrer to the complaint, defendants appeal. Affirmed.

The following is a copy of the demurrer filed:

The above-named defendant, appearing by John T. Fenlon, its attorney, demurs to the complaint herein on the ground that it appears on the face of the complaint—First, that the complaint does not state facts sufficient to constitute a cause of action; second, that there is a defect of parties defendant, for the reason that the names of Joseph L. Parraga and David F. Casey, composing the firm of Whipple & Co., have been omitted; third, that there is a defect of parties defendant, for the reason that the names of the seven or more members mentioned in the complaint as forming the alleged association are omitted as parties defendant. Wherefore defendant demands judgment that the complaint be dismissed, with costs.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY, and O'BRIEN, JJ.

John T. Fenlon, for appellants.
John Berry, for respondent.

RUMSEY, J. The action is brought, pursuant to chapter 846 of the Laws of 1867, to recover a certain assessment levied upon the premiums received by the defendants for insurance issued in the city of New York. The defendants demur to the complaint upon three grounds: First, that it does not state facts sufficient to constitute a cause of action, and that there is a defect of parties defendant, for two reasons more particularly stated in the demurrer. As to the second and third grounds of demurrer, neither of them is well taken, for it does not appear upon the face of the complaint that the objection therein urged exists.

As to the first ground of demurrer, the questions raised upon it, with one exception, have been disposed of by the case of this plaintiff against the Metropolitan Lloyds of New York City, reported in 11 Misc. 646, 33 N. Y. Supp. 547. This decision was affirmed by the general term without opinion. 87 Hun, 619, 33 N. Y. Supp. 1131. That case differs from this in only one respect, which is entirely unimportant. In the complaint in that case the statute under which the plaintiff was organized, and by which the liability sued upon was created, was not pleaded. Here it is pleaded. But the distinction is of no importance for the purposes of this demurrer. So far as the questions presented were passed upon by the court in that case, it is authoritative, and must be held to sustain the complaint here. In that case, however, at the special term, the court declined, for reasons which were sufficient, to pass upon the con-

stitutionality of the statute under which the plaintiff was created, and by which the liabilities sought to be enforced in that action, as in this, were brought into existence. The general term, in the exercise of a wise discretion, thought it was advisable to affirm the judgment without passing upon that question. But in view of the fact that numerous actions have been commenced since that time to enforce the same liability, three of which have been presented to us at this time, it has been thought best to examine the question of constitutionality, and to decide it.

The act in question is chapter 846 of the Laws of 1867, entitled "An act to incorporate the New York Board of Fire Underwriters." By the first section a large number of officers of different fire insurance companies and associations, "and all other persons, presidents or other officers for the time being of any incorporated company or association, and any agent doing the business of fire insurance in the city of New York, who may become associated with them, are hereby created a body corporate by the name of 'The New York Board of Fire Underwriters.'" The remaining sections prescribe the purposes for which the corporation is organized; specify its officers, and, generally, the manner of performance of its business, and the powers which it shall have. The seventh, eighth, ninth, and tenth sections give power to the corporation to create a "fire patrol," as it is called, and regulate the powers to be given to that patrol, and prescribe the manner in which the money to pay the expenses of that patrol shall be raised and collected. These sections will be more fully referred to later.

The first objection to the constitutionality of the act is that, being a private and local act, it contains more than one subject, and the subject is not sufficiently expressed in the title. That this act is a private and local act must be conceded. People v. Supervisors of Chautauqua Co., 43 N. Y. 10. The fact that certain provisions of the act may be public in their nature does not make the whole act public, so that it ceases to be within the article of the constitution mentioned above. The title of the act has been quoted above. It is certainly germane, so far as it goes, to the object for which the act was passed; and we think, within rules which are now well settled, it complies with the requirements of the constitution. The rule now, as settled, is that, where the title of a local or private act expresses a general purpose or object, all matters fairly and reasonably connected with it, and all measures which will or may facilitate its accomplishment are proper to be incorporated in the act, and are germane to its title. People v. Briggs, 50 N. Y. 553; In re Knaust, 101 N. Y. 189, 4 N. E. 338; Sweet v. City of Syracuse, 129 N. Y. 316, 330, 27 N. E. 1081, and 29 N. E. 289. The objection referred to, we think, is clearly not well taken.

But a further objection is suggested which requires more examination. It is claimed that the provisions of this act are such as, in effect, to authorize the corporation created by it to levy a tax upon the premiums received by persons engaged in the business of insurance in the city of New York, whether they are members of the corporation or not, and that this is substantially tak-

ing private property without due process of law, and that the power to do it neither exists in the legislature, nor can be delegated by it. Undoubtedly, if the conclusion drawn from the provisions of this act is correct, the act violates the constitution and is invalid; but we do not think that it is susceptible of such construction. The right to levy this assessment for the purposes provided for in this act is not the levying of a tax, but it is to be sustained as an exercise by the legislature of its police power in the regulation of business. In examining the question of the constitutionality of an act of the legislature of the state, it must be borne in mind that all the legislative power is vested in the legislature. Unless the constitution forbids the act, it is within the power of the legislature, if it is legislative in its nature, and in every case the presumption is that the act is valid. People v. Rice, 135 N. Y. 473, 3 N. E. 921. The presumption in this case is strengthened because of the fact that this act having been upon the statute book for nearly 30 years,—business having been done under it and assessments levied pursuant to it during all that time without objection, so far as appears,—it is not lightly to be overthrown, and certainly ought not to be overthrown in any doubtful case. The existence of what is known as the "police power" in the legislature, by which it is authorized to exercise a regulating and controlling power over the internal affairs of the state, is well settled. It is equally well settled that such a power is far-reaching. Cooley, Const. Lim. 713 et seq. In the nature of things, of course, it is difficult to define it; and it is almost impracticable, in general words, to set any limit to its exercise, or to lay down any general rules within which it must be brought before the exercise of it can be sustained. It has been said—and such appears to be the current of authority—that it authorizes the government of the state to regulate the conduct of its citizens towards each other, and, when necessary for the public good, the manner in which each shall use his own property. Munn v. Illinois, 94 U. S. 113. The rules laid down in that case, although meeting with strong dissent from a portion of the court when the case was decided, have been, we think, now fully adopted by many of the courts of the United States as an accurate statement of the extent to which the courts may go in regulating and controlling the use of property under the police power. The rule, as settled by that case and by other cases, may be said to be that, when the owner of property devotes it to a use in which the public has an interest, he, in effect, grants to the public an interest in that use, and must, to the extent of that interest, submit to be controlled by the public, for the common good, so long as he maintains the use. Within the same principle, if a business in which the citizen engages is one of a public nature, or in which the public have an interest, he must submit, for the public purposes, to the regulation of his business by the authority of the state. This, we think, cannot be denied. The question, then, is presented, what constitutes a public interest in any business, which will authorize the state to make regulations concerning it? This question was considered at large in the case of Munn v. Illi-

nois, cited above. The chief justice, in delivering the opinion of the court in that case, says:

"Under the police power, the government regulates the conduct of its citizens, one towards another, and the manner in which each shall use his own property, when such regulation becomes necessary for the public good."

And he says that under that power it has been customary, from time immemorial, in England and in this country, to regulate ferries, common carriers, hackmen, bakers, millers, innkeepers, and people exercising business of that nature. It is said that property becomes clothed with a public interest when used in a manner to make it of public consequence, and affect the community at large. Many cases and instances are cited in the prevailing opinion in that case in which the legislatures, in various states, have regulated the conduct of business of different kinds, all of which have been sustained upon the ground that the business was one which affected public interest, and therefore was amenable to control by the public authorities. The question of the power of the state to regulate business has been presented in many cases in this state, and the case of Munn v. Illinois, supra, has been followed, as laying down the true rule under which the exercise of police power could be sustained. People v. Budd, 117 N. Y. 1, 22 N. E. 670, 682, and cases cited; People v. King, 110 N. Y. 415, 18 N. E. 245. The question of the extent of the police power is considered fully by Judge Cooley in his learned work on Constitutional Limitations, and he comes to the conclusion that any property or business which is effected with the public interest is amenable to the police power of the state, and that any business is said to be effected with the public interest where either the following of it was not as of right, but was permitted by the state as a privilege or franchise, or where exclusive privileges are granted in consideration of some special return to be made to the public. Cooley, Const. Lim. § 746. It is not necessary to pursue the examination of this branch of the subject further, because we are satisfied that the conclusions of Judge Cooley are fully sustained by principle and authority. Although at one time the business of insurance in this state was one which might be followed by anybody, and with regard to which no restrictions were imposed, yet that for many years has ceased to be the case. Not only is that business now regulated by many laws, but the pursuing of it is forbidden, except by certain persons, who are licensed and authorized for that purpose, and who thereby receive from the state a privilege to pursue it apart from other persons. Insurance Law, §§ 9, 34, 54. It has been the policy of the state, for many years, to regulate and control this business, in view of its great extent, the great interests involved in it, and the serious damage to the great body of citizens which might result if the business was entirely without control. The right to thus control it can hardly be questioned at this day. For that reason people exercising the business of insurance in this state are clearly within the control of the police power, because, as is said in the cases above cited, they have a virtual monopoly of the business, by the grant of the state. The act in question authorizes

this corporation to establish a fire patrol, having for its object to preserve life and property at and after a fire; and, to enable the patrol so organized to act with promptness and efficiency, certain powers, almost public in their nature, are given to them. It will be seen at once that this patrol may render great service to persons authorized to pursue the business of insurance within this city, where the powers of the patrol are to be exercised. It is a valuable adjunct to this business, and one which might well be created by the state as a means of benefit, not only to citizens, but to those persons who have contracted to furnish indemnity to citizens in case of the destruction of their property by fire. The act requires all persons who are engaged in the business of insurance in the city of New York to render to the corporation organized by it a return of the amount of premiums received by them during certain months of the year, and authorizes the corporation to charge upon all persons engaged in that business such sum as may be necessary to pay the expenses of the fire patrol, not exceeding 2 per cent. of the amount of the premiums received by them. It affixes a penalty for a refusal to make the returns, and makes the sum assessed collectible by action. Within the principles laid down above, we think the power of the legislature to impose upon persons authorized to issue insurance in this city the duty of taking this step to preserve life and property at fires cannot be questioned. These persons have the exclusive privilege of entering into such contracts. The nature of the contract is one which renders it peculiarly proper that they should not only have the privilege, but be charged with the duty, of protecting property, and life, also, when in danger from conflagrations. We think there can be no doubt that this duty may properly be imposed upon them, and that they may be required to pay the expenses of it. For these reasons the act, in our judgment, is constitutional, and, as it is so, it creates a good cause of action; and a complaint brought under it, if otherwise setting upon the proper facts, does state facts sufficient to constitute a cause of action, and is not demurrable. For the reasons above given, we think this complaint is good, and the judgment overruling the demurrer should be affirmed, with costs.

Judgment affirmed, with costs, with leave to the appellants to withdraw the demurrer in 20 days, and answer, on payment of the costs in this court and of the costs in the court below. All concur.

---

NEW YORK BOARD OF FIRE UNDERWRITERS v. WHIPPLE et al.
(No. 209.)

(Supreme Court, Appellate Division, First Department. March 6, 1896.)

Appeal from special term, New York county.
Action by the New York Board of Fire Underwriters against Whipple & Co., as chief executive officers of the North & South American Lloyds. From an order overruling a demurrer to the complaint, defendants appeal. Affirmed.