(20 Misc. Rep. 461.)

### FOX v. MOHAWK & H. R. HUMANE SOC.

### EVANS v. SAME.

(Supreme Court, Trial Term, Albany County.    March, 1897.)

1. DUE PROCESS OF LAW—ANIMALS—REGULATIONS.

    Laws 1896, c. 448, providing that any person who harbors a dog in a city of more than 20,000 and less than 800,000 inhabitants, where a duly-incorporated society for the prevention of cruelty to animals exists, except in the city of Buffalo, shall procure a license for such dog, and pay a fee therefor, and that unlicensed dogs may be seized and destroyed by the society for the prevention of cruelty to animals, such societies being authorized to carry out the act, and collect and use the fees, is a proper exercise of the police power, and does not violate the constitution of the state or of the United States by depriving persons of property without due process of law or without just compensation.

2. TAXES—WHAT ARE—LICENSE FEES.

    No provision being made in said act for the collection of the license fees, but the keeping of the dogs being merely prohibited unless the fees are paid, such fees are not taxes, and are not governed by the provisions of the constitution of the state relating to the imposition of taxes.

**3. SAME—DEVOTION TO PUBLIC USES.**

The legislature may devote such fees to the benefit of the societies for the prevention of cruelty to animals having public duties, and recognized in the general statutes of the state.

**4. GENERAL AND SPECIAL CITY LAWS.**

Said act, embracing all the cities of the second class and parts of the cities of the first and third classes, and not relating to the property, affairs of government of cities, or of the several departments thereof, is neither a general nor a special city law.

**5. PRIVATE AND LOCAL BILLS.**

Said act, relating to all persons generally harboring dogs in cities within the specified limits of population as a class, is not a private or local bill, and the exception of the city of Buffalo does not affect the character of the act.

Separate actions by Frederick Fox and by Melvine L. Evans against the Mohawk & Hudson River Humane Society. Judgments for defendant.

The two above-entitled actions were respectively brought by the owners of certain dogs within the corporate limits of the city of Albany, who ask in their complaints that chapter 448 of the Laws of 1896 be adjudged unconstitutional and void, and that the defendant, its officers and agents, be restrained from destroying the plaintiffs' dogs. The defendant was incorporated by a union of a society for the prevention of cruelty to children and a society for the prevention of cruelty to animals by chapter 292 of the Laws of 1894, and, besides the powers conferred upon the society for the prevention of cruelty to children by chapter 130 of the Laws of 1875, and upon the society for the prevention of cruelty to animals by chapter 490 of the Laws of 1888, it has the powers enumerated in article 5 of chapter 559 of the Laws of 1895, and also the police powers particularly specified in section 668 of the Penal Code.

By section 1 of chapter 448 of the Laws of 1896 it was provided that: "Every person who owns or harbors one or more dogs within the corporate limits of any city having a population of more than twenty thousand and less than eight hundred thousand, where a duly-incorporated society exists or may hereafter exist for the prevention of cruelty to animals except in the city of Buffalo shall procure a yearly license for each animal paying the sum of one dollar for each one as hereinafter provided; in applying for such license the owner shall state in writing the name, sex, breed, age, color and markings of the dog for which a license is to be procured." The act further provides that the dog so licensed shall have a collar about its neck, with a metal tag attached thereto, bearing the number of the license. Such tag is to be supplied to the owner with the certificate of license. Dogs not licensed pursuant to the provisions of the act shall be seized, and, if not redeemed within 48 hours, may be destroyed or otherwise disposed of at the discretion of the society empowered and authorized to carry out the provisions of the act. Any person claiming any dog seized under the provisions of the act, on proving ownership, shall be entitled to resume possession on payment of two dollars. The act further provides that the societies referred to are empowered and authorized to carry out the provisions of the act, and to issue licenses and renewals and collect fees, "which fees are to be used by such society towards defraying the cost of carrying out the provisions of this act, and maintaining a shelter for lost, strayed, or homeless animals, and for its own purposes." The act also provides that any person who shall hinder, molest, or interfere with any officer or agent of such society while in the performance of any duty enjoined by the act shall be deemed guilty of a misdemeanor. The plaintiffs claim the act to be unconstitutional for the following reasons: (1) It takes property without due process of law, and without just compensation, in violation of article 5, § 1, of the constitution of the United States, and of article 1, § 6, of the constitution of the state of New York. (2) It is an unauthorized exercise of the power of taxation. (3) It permits irresponsible persons without any badge of authority other than that employed by the society for the prevention of cruelty to animals to invade the residence or home of a citizen, and, in case a person hinders, mo-

lests, or interferes with any officer or agent of such society while in the performance of his duty, subjects such person to criminal liability. (4) It is a special city law, and has not been submitted to any municipal authority for approval. (5) It is a local act, within the meaning of article 3, § 16, of the constitution of the state of New York, and the subject is not expressed in the title as thereby required.

Luther C. Warner, S. J. Daring, and J. S. Frost, for plaintiffs.
Marcus T. Hun, for defendant.

CHASE, J. Although the constitution of the United States and the constitution of the state of New York provide that a person shall not be deprived of his property without due process of law, and that private property shall not be taken for public use without just compensation, yet all the states of the Union recognize and exercise a certain power, known as the police power of the state, to preserve and promote public safety and welfare. Police power is exercised by the legislature of the several states, and the legislature determines when the public safety and welfare requires its exercise. Unless the legislature, under pretense that it is essential to the public safety and welfare, arbitrarily exercises such police power, the courts will not interfere with or restrain the carrying out of the provisions of such statutes.

The first question for determination in this case is whether chapter 448 of the Laws of 1896 is a proper exercise of the police power of this state. In this state dogs are recognized as property, and an action will lie for their conversion or injury. At common law the crime of larceny could not be committed by feloniously taking and carrying away a dog. Mullaly v. People, 86 N. Y. 365. The United States supreme court very recently (April 26, 1897) decided the case of Sentell v. Railroad Co., 17 Sup. Ct. 693, being an action to recover for injuries to a dog in the state of Louisiana. The opinion of Mr. Justice Brown in discussing the nature of dogs and the right of the several states to pass statutes relating to dogs is so complete, and accords so fully with my own views on the subjects discussed, that I quote from the same at length:

"The very fact that they are without the protection of the criminal laws shows that property in dogs is of an imperfect or qualified nature, and that they stand, as it were, between animals feræ naturæ, in which, until killed or subdued, there is no property, and domestic animals in which the right of property is perfect and complete. They are not considered as being upon the same plane with horses, cattle, sheep, and other domesticated animals, but rather in the category of cats, monkeys, parrots, singing birds, and similar animals kept for pleasure, curiosity, or caprice. They have no intrinsic value, by which we understand a value common to all dogs as such, and independent of the particular breed or individual. Unlike other domestic animals, they are useful neither as beasts of burden, for draught (except to a limited extent), nor for food. They are peculiar in the fact that they differ among themselves more widely than any other class of animals, and can hardly be said to have a characteristic common to the entire race. While the higher breeds rank among the noblest representatives of the animal kingdom, and are justly esteemed for their intelligence, sagacity, fidelity, watchfulness, affection, and above all for their natural companionship with man, others are afflicted with such serious infirmities of temper as to be little better than a public nuisance. All are more or less subject to attacks of hydrophobic madness. As it is practically impossible by statute to distinguish between the different breeds, or between the valuable and the worth-

less, such legislation as has been enacted upon the subject, though nominally including the whole canine race, is really directed against the latter class, and is based upon the theory that the owner of a really valuable dog will feel sufficient interest in him to comply with any reasonable regulation designed to distinguish him from the common herd.  Acting upon the principle that there is but a qualified property in them, and that, while private interests require that the valuable ones shall be protected, public interests demand that the worthless shall be exterminated, they have from time immemorial been considered as holding their lives at the will of the legislature, and properly falling within the police powers of the several states. [See cases cited in opinion.]  *  *  *  Even if it were assumed that dogs are property in the fullest sense of the word, they would still be subject to the police power of the state, and might be destroyed or otherwise dealt with as in the judgment of the legislature is necessary for the protection of its citizens.  That a state, in a bona fide exercise of its police power, may interfere with private property, and even order its destruction, is as well settled as any legislative power can be which has for its objects the welfare and comfort of the citizen. [See cases cited in opinion.]  *  *  *  Although dogs are ordinarily harmless, they preserve some of their hereditary wolfish instincts which occasionally break forth in the destruction of sheep and other helpless animals.  Others, too small to attack these animals, are simply vicious, noisy, and pestilent.  As their depredations are often committed at night, it is usually impossible to identify the dog or to fix the liability upon the owner, who, moreover, is likely to be pecuniarily irresponsible.  In short, the damages are usually such as are beyond the reach of judicial process, and legislation of a drastic nature is necessary to protect persons and property from destruction and annoyance.  Such legislation is clearly within the police power of the state. It ordinarily takes the form of a license tax, and the identification of the dog by a collar and tag upon which the name of the owner is sometimes required to be engraved, but other remedies are not uncommon."

As early as 1789 the legislature of this state passed an act taxing dogs, and providing that any person might kill a dog when found chasing sheep.  From 1789 down to this time statutes have been passed from time to time relating to dogs, and providing that dogs should be taxed, and also providing that dogs should be killed without notice to the owner when found chasing sheep, and at other times, as provided in the different acts.  See Laws 1789, c. 22, and various other laws from time to time, including the present "county law."  These statutes have been generally acquiesced in as a proper exercise of the police power of the state, and such exercise of power for more than 100 years is strong argument in favor of the right of the legislature to exercise such power without violating the constitution.  If the first contention of the plaintiffs is right, it would require the courts to hold that the legislation referred to, and which has been acquiesced in during our entire history as a state, is unconstitutional and void.  I cannot so hold.  The right of the state in the interest of public safety and welfare to destroy property of trifling or little value has been frequently recognized by our courts. The person whose property is destroyed is, in the theory of the law, compensated by sharing in the general benefits which the destruction is calculated to secure.  Health Department of City of New York v. Rector, etc., of Trinity Church, 145 N. Y. 32, 39 N. E. 833; Lawton v. Steele, 119 N. Y. 226, 23 N. E. 878; People v. West, 106 N. Y. 293, 12 N. E. 610; People v. Havnor, 149 N. Y. 195, 43 N. E. 541.  The purpose of the act is not to secure a revenue, but to prevent the running at large of ownerless dogs which have no provision made for their support, and which may become dangerous

to the public by reason of their not having proper care and attention. The evidence shows that there are a large number of dogs on the public streets of the cities of this state that are or may become dangerous to human life. Payment of a license fee and the purchase of a tag as provided by the act is a condition precedent to the right to own or harbor a dog. In the absence of a compliance with this condition, the dog is liable to be seized, and, after a certain interval of time, destroyed as provided by the act. No provision whatever is made in the act for the collection of the license fee. Where the general purpose of the act is not the raising of a revenue, but the regulation of a business, or the restriction of the right to keep an animal that may become dangerous to the public, and no provision is made for the enforcement of the collection of the license fee, but simply prohibiting the conduct of such business or the keeping of such animal unless the license fee is paid, the amount so to be paid is not a tax, and is not governed by the provisions of the constitution of the state relating to the imposition of taxes. Trustees v. Roome, 93 N. Y. 313; People v. Murray, 149 N. Y. 367, 44 N. E. 146; People v. Fire Ass'n of Philadelphia, 92 N. Y. 311. Societies for the prevention of cruelty to animals or children are recognized in the general statutes of this state. They exercise certain public duties, and the service they perform is in part a public service. The officers and agents of all duly-incorporated societies for the prevention of cruelty to animals or children are declared to be peace officers, within the provisions of section 154 of the Code of Criminal Procedure. Pen. Code, § 668. Any agent or officer of any such society may arrest without warrant, and bring before the court or magistrate having jurisdiction, any person offending against any of the provisions of title 16 of the Penal Code. Any person who shall interfere with or obstruct any such officer or agent in the discharge of his duties is guilty of a misdemeanor. Pen. Code, § 668. The right of the legislature to devote license fees to the benefit of a society having public duties, and which can be properly described as a subordinate governmental agency, has been recently upheld by our court of appeals. Trustees v. Roome, 93 N. Y. 313. See Board v. Whipple, 2 App. Div. 361, 37 N. Y. Supp. 712.

Section 2 of article 12 of the constitution provides:

"All cities are classified according to the latest state enumeration as from time to time made as follows: The first class includes all cities having a population of two hundred and fifty thousand or more; the second class all cities having a population of fifty thousand and less than two hundred and fifty thousand; the third class all other cities. Laws relating to the property, affairs of government of cities, and the several departments thereof are divided into general and special city laws; general city laws are those which relate to all cities of one or more classes; special city laws are those which relate to a single city or to less than all the cities of a class. Special city laws shall not be passed except in conformity with the provisions of this section. * * *"

The act under consideration embraces all cities of the second class and part of the cities of the first and third class. It does not relate to a single city, or to less than all the cities of a class. It is neither a general nor special city law, for the reason that it does not relate to the property, affairs of government of cities, or of the sev-

eral departments thereof. People v. Sheriff of Kings Co., 13 Misc. Rep. 587, 35 N. Y. Supp. 19; People v. Murray, 149 N. Y. 367, 44 N. E. 146; People v. Havnor, 149 N. Y. 195, 43 N. E. 541.

Article 3, § 16, of the state constitution provides:

"No private or local bill which may be passed by the legislature shall embrace more than one subject, and that shall be expressed in the title."

The court of appeals, in construing chapter 554 of the Laws of 1881, relating to all incorporated cities containing 100,000 inhabitants or upwards, uses this language:

"A law relating to particular persons or things as a class was said to be general, while one relating to particular persons or things of a class was deemed local and private. The act of 1881 relates to a class, and applies to it as such, and not to the selected or particular elements of which it is composed. The class consists of every county in the state having within its boundaries a city of one hundred thousand inhabitants, and territory beyond the city limits mapped into streets and avenues. How many such counties there are now, or may be in the future, we do not know, and it is not material that we should. Whether many or few, the law operates upon them all alike, and reaches them, not by a separate selection of one or more, but through the general class of which they are individual elements. The force of the law of 1881 is not localized in Kings county and confined to its territory. By its terms it applies equally to every other county which may prove to be within the constituted class." In re Church, 92 N. Y. 1.

Again, the court of appeals, construing chapter 449 of the Laws of 1885, relating to all cities containing more than 500,000 inhabitants, uses this language:

"Neither is the act a local or private one within the meaning of the section referred to. Such was the decision of this court in Re New York El. R. Co., 70 N. Y. 327; In re Church, 92 N. Y. 1. This act is general in its terms, applying to all cities in the state of a certain class, and to every corporation carrying on a business requiring the use of electrical wires or conductors in such cities. That the number of such cities is limited or restricted does not make the bill a private or local one, within the constitutional meaning and intent of these words, was expressly decided in the cases referred to." People v. Squire, 107 N. Y. 593, 14 N. E. 820.

The act under consideration is general in its nature. It relates to particular cities as a class. It does not relate alone to people residing in cities having a population of more than 20,000 and less than 800,000, except in the city of Buffalo. It relates to all people generally owning or harboring dogs in specified cities as a class. The exception of the city of Buffalo does not affect the character of the act. People v. Havnor, 149 N. Y. 195, 43 N. E. 541; People v. Sheriff of Kings Co., 13 Misc. Rep. 587, 35 N. Y. Supp. 19; People v. Plank Road Co., 86 N. Y. 1.

All the objections raised to the act by the plaintiffs have, in my judgment, been substantially passed upon by the courts in this state adversely to the claim of the plaintiffs. The complaint of the plaintiff in each case is dismissed, with costs