MARCELLUS RHINEHART *v.* STATE.

*(Nashville.    December Term, 1908.)'*

1. **CONSTITUTIONAL LAW.** Statute (the fire marshal law) containing but one subject, and that expressed in its title.

A statute (Acts 1907, ch. 460), known as the fire marshal law, entitled "An act to reduce the fire waste in Tennessee by providing for the investigation of fires, and to provide for the expense of such investigation," and whose body imposes a certain tax rate upon the gross receipts of fire insurance companies for the purpose of providing or creating an expense fund for the enforcement of the law, contains but one subject which is expressed in the title. The provisions for the investigation of fires and for the payment of the expenses of such investigations are only the means by which the subject of the act, expressed in the title, is to be accomplished. (*Post, pp.* 426, 429, 430, 433, 434.)

Acts cited and construed:    Acts 1907, ch. 460.

Constitution cited and construed: Art: 2, sec. 17.

Cases cited and approved: Railroads v. Crider, 91 Tenn., 489-493; State v. Yardley, 95. Tenn., 546; Peterson v. State, 104 Tenn., 127; Railroad v. Byrne, 119 Tenn., 278.

2. **SAME.** Separable unconstitutional provision in a statute does not invalidate the rest of it, when.

The constitutionality of the provision of the fire marshal law (Acts 1907, ch. 460, sec. 4), authorizing the insurance commissioner, in his investigation of the origin of fires, to enter upon and examine any building or premises where a fire has occurred, or any building or premises adjoining the same, is not decided, because it is not involved in the case, but even if it were unconstitutional because in conflict with the constitutional provision (art. 1, sec. 7) forbidding unreasonable searches and seizures, the other provisions of the act for the investigation and preven-

Rhinehart v. State.

tion of fires would not be thereby invalidated. The statute is effective without this provision, and would have been enacted without it.  (*Post, pp.* 429, 434-436.)

Cases cited and approved:  State v. Cummins, 99 Tenn., 667; Cummings v. Trewhitt, 113 Tenn., 561; Fite v. State, 114 Tenn., 659; State v. Willett, 117 Tenn., 334; Malone v. Williams, 118 Tenn., 390.

Cases bearing upon the question cited:  Boyd v. United States, 116 U. S., 616; Adams v. New York, 192 U. S., 585; Hale v. Henkel, 201 U. S., 43.

3.  **SAME.**  Tax on gross receipts of fire insurance companies for enforcement of fire marshal law is valid as a privilege tax.

The provision in the fire marshal law (Acts 1907, ch. 460, sec. 6) levying a tax of one-fifth of one per cent· upon the gross receipts of fire insurance companies for the purpose of creating a fund to pay the expenses of enforcing the law, and directing the surplus of such fund remaining at the end of any year to be paid into the State treasury, is not in conflict with the constitutional provision (art. 2, sec. 28) requiring all property to be taxed equally and uniformly, according to value, which has reference solely to assessments and taxes for revenue, made and levied upon property according to its value; and this charge on insurance companies can be nothing more that a privilege tax, if it be a tax, and the legislature may impose privilege taxes at its discretion.  (*Post, pp.* 429, 430, 436-440.)

Acts cited and construed:  Acts 1907, ch. 460, sec. 6.

Constitution cited and construed:  Art. 2, sec. 28.

Cases cited and approved:  Kurth v. State, 86 Tenn., 136; Kennedy v. Montgomery Co., 98 Tenn., 180; Telegraph Co. v. Philadelphia, 190 U. S., 160; Telegraph Co. v. Taylor, 192 U. S., 64-70; Terre Haute v. Kersey, 159 Ind., 300.

4.  **POLICE POWER.**  Fire marshal law for protection from fires and imposing a tax for its enforcement is valid.

The fire marshal law (Acts 1907, ch. 460) providing for the investigation of the origin of fires and for the prevention of fires,

and levying a certain tax rate upon the gross receipts of fire insurance companies for the creation of an expense fund for the enforcement of said law, is a police measure, and constitutes a valid exercise of the police power of the State. ( *Post, pp.* 426, 429, 430, 437-440, 443, 445.)

Acts cited and construed: Acts 1907, ch. 460, sec. 6.

Cases cited and approved: Knoxville v. Bird, 12 Lea, 123; Reelfoot Lake Levee District v. Dawson, 97 Tenn., 171; Webster v. State, 110 Tenn., 504; Arnold v. Knoxville, 115 Tenn., 204; Morrison v. State, 116 Tenn., 544; Underwriters v. Whipple (N. Y.), 2 App. Div., 361, and cases cited under headnote 3.

5. **FIRES.** Investigation of origin of fires may be conducted at insurance commissioner's office in the State capitol.

Under the fire marshal law (Acts 1907, ch. 460) authorizing the insurance commissioner to investigate the origin of fires throughout the State, such investigation may be conducted at his office in the State capitol, where he is required by law enacted previous to said act to keep his office, though the fire under investigation occurred in another county, especially when there is no provision in the act as to where the investigation shall be conducted. (*Post, pp.* 426-430, 441, 447.)

Acts cited and construed: Acts 1907, ch. 460.

6. **SAME.** Fire marshal law is a remedial statute, and must be liberally construed.

The fire marshal law (Acts 1907, ch. 460), authorizing the insurance commissioner to investigate the origin of fires and to subpoena witnesses for that purpose, is remedial in its nature and should receive a broad and liberal construction to effect the purpose of its enactment. (*Post, p.* 443.)

7. **WORDS AND PHRASES.** The words "trial justice" mean a justice of the peace, when.

The words "trial justice" used in the provision of the fire marshal law (Acts 1907, ch. 460), vesting in the insurance commissioner or his deputy all the power of a "trial justice" for the purpose of summoning and compelling the attendance of witnesses, mean a justice of the peace. (*Post, p.* 442.)

Rhinehart v. State.

8. **FIRES.** Insurance commissioner may subpoena witnesses from any part of the State to appear before him in investigations of fires.

· The fire marshal law (Acts 1907, ch. 460, sec. 3), vesting in the insurance commissioner or his deputy all the powers of a "trial justice" (meaning a·justice of the peace) for the purpose of summoning and compelling the attendance of witnesses to testify in investigations under the act, in connection with the existing law (Shannon's Code, sec. 7358), empowering justices to summon witnesses, authorizes the insurance commissioner, in such investigations, to issue subpoenas to compel witnesses from any part of the State to appear before him at his office. (*Post, pp.* 428, 429, 442, 443.)

Code cited and construed: Secs. 5615, 5937 (subsec. 4), 7358 (S.); secs. 4580, 4900 (subsecs. 4), 6225 (M. & V.); secs. 3827, 4125 (subsec. 4), 5380 (T. & S. and 1858).

9. **SAME.** Fire marshal law is a police measure, and the proceedings under it are more criminal than civil in their nature.

The fire marshal law (Acts 1907, ch. 460) is a police measure, passed for the protection of life and property, and to facilitate the detection of those guilty of fraudulent and incendiary fires, and to aid in bringing them to punishment, and the investigation provided for is more a criminal proceeding than a civil one, and it was clearly the intention to confer upon the insurance commissioner all the power vested in justices of the peace to require witnesses to appear before them and testify in relation to crimes committed. (*Post, pp.* 442, 443, 445.)

Acts cited and construed: Acts 1907, ch. 460.

10. **WITNESSES.** Jurisdiction to enforce penalty for nonattendance of witnesses before insurance commissioner.

Under the fire marshal law (Acts 1907, ch. 460, sec. 3), vesting in the insurance commissioner or his deputy all the powers of a justice of the peace for the purpose of summoning witnesses and compelling their attendance to testify in his investigations of fires, in connection with the existing statutes (Shannon's Code,

Rhinehart v. State.

secs. 5608, 5609, and 5610, imposing penalties upon witnesses for
their nonattendance, and the statute (Shannon's Code, sec. 5613),
providing for the enforcement, in the circuit court, of the pen-
alty against a witness for his nonattendance before a justice of
the peace or commissioner, the circuit court of the county in
which the insurance commissioner has his office has jurisdiction
to enforce against a witness the penalty of two hundred and
fifty dollars for his disobedience to a subpoena, where the cer-
tificate of such disobedience is indorsed on the subpoena, and
returned to said court, by the said commissioner or his deputy.
(*Post, pp.* 428, 429, 443-445, 447.)

Code cited and construed:   Secs. 5608-5610, 5613 (S); secs. 4573-
4575, 4578 (M. & V.); secs. 3820, 3821, 3824 (T. & S. and 1858).
Acts cited and construed:   Acts 1907, ch. 460, sec. 3.

11. **SAME. Same. Motion for penalty for nonattendance of wit-
ness should be in the name of the State; commissioner as re-
lator is surplusage.**
The motion for the recovery of a penalty against a witness for
his failure to appear, in answer to a subpoena, before the in-
surance commissioner, in the investigation of the origin of a
fire, pursuant to the fire marshal law (Acts 1907, ch. 460), should
be made in the name of the State, without the intervention of
the commissioner as relator; but his name, being mere sur-
plusage, will not affect the action, the State being the real party
in interest.   (*Post, pp.* 445, 446.)

12. **SAME. Cannot excuse himself by his judgment or the advice
of counsel as to the materiality of his evidence and attendance.**
Even if the insurance commissioner was exceeding his authority
under the fire marshal law (Acts 1907, ch. 460) in investigating
matters not pertinent to the origin of the fire in question, that
would be no excuse for a witness to disobey the subpoena is-
sued by the commissioner and served upon him.  A witness can-
not determine for himself whether or not his evidence is ma-
terial or whether he should attend, and the advice of counsel
will not protect him, especially where he disobeyed the subpoena
in the interest of such counsel's client.   (*Post, pp.* 446, 447.)

Rhinehart v. State.

FROM DAVIDSON.

Appeal in error from the Circuit Court of Davidson County.—LYTTON TAYLOR, Special Judge.

DAINCEY FORT and H. N. LEECH, for Rhinehart.

ATTORNEY-GENERAL CATES, JOHN J. VERTREES, W. O. VERTREES, THOS. H. MALONE, JR., and AUSTIN PEAY, for State.

MR. JUSTICE SHIELDS delivered the opinion of the Court.

This is an action, begun by motion in the circuit court of Davidson county, to recover of the plaintiff in error, a citizen of Montgomery county, a penalty of $250 for willfully refusing and failing to appear before the insurance commissioner of Tennessee, at his office in the capitol at Nashville, in Davidson county, to testify and give evidence in an investigation then being conducted by the commissioner concerning the cause, origin, and circumstances of the burning of the storehouse of W. E. Wall & Son, in Montgomery county, under what is known as the "Fire Marshal Law," being chapter 460, p. 1538, of the Acts of 1907, in obedi-

ence to a subpoena issued by T. Leigh Thompson, deputy insurance commissioner, to the sheriff of Montgomery county, for the plaintiff in error, and there served upon him.

The defenses of the plaintiff in error involve the constitutionality and the construction of the statute under which the commissioner was proceeding, and we here state it in full:

"An act to reduce the fire waste in Tennessee by providing for the investigation of fires, and to provide for the expense of such investigations.

"Section 1.  Be it enacted by the general assembly of the State of Tennessee, that the insurance commissioner and the sheriff are hereby authorized to investigate the cause, origin and circumstance of every fire occurring in the State by which property has been destroyed or damaged, and shall specially make investigation as to whether such fire was the result of carelessness or design.  Whenever such fires occur it shall be the duty of the sheriff to notify the insurance commissioner as early as practicable thereafter of the occurrence of such fire.  It shall be a sufficient compliance with the requirement to send said notice as aforesaid by registered mail, addressed to the insurance commissioner at Nashville.

"A preliminary investigation of all fires shall be made by the sheriff, and shall be begun within three days thereafter, and, if not, then as soon as practicable after he has such information and the insurance commis-

sioner shall have the right to supervise and direct such investigation whenever he deems it necessary or expedient. The officer making such investigation of fires shall, within one week of the occurrence of the fire (if the preliminary investigation can be concluded in that time, if not, then as soon thereafter as such investigation is concluded), furnish to the said insurance commissioner a written statement of all of the facts relating to the cause and origin of the fire, the kind and ownership of the property destroyed and such other information as may be called for by the blanks provided by the insurance commissioner. The insurance commissioner shall keep in his office a record of all fires occurring in the State, together with all facts, statistics and circumstances, including the origin of the fires, which may be developed by the investigations provided for by this act.

"Sec. 2. Be it further enacted, that the insurance commissioner shall have power, and it shall be his duty, either in person or by deputy or by the officers provided in section 1 of this act, to examine or cause examination to be made, into the cause, circumstances and origin of all fires occurring within the State to which his attention has been called in accordance with the provisions of section 1, or otherwise, by which property is accidentally or unlawfully destroyed or damaged by fire, and to especially examine and decide whether said fire was the result of carelessness or was the act of an incendiary. The insurance commissioner shall, in

Rhinehart v. State.

person, by deputy or by an officer named for the purpose in section 1 herein, fully investigate all the circumstances surrounding such fire, and when, in the opinion of the officers making the investigation, such proceedings are necessary, take, or cause to be taken, the testimony on oath of all persons supposed to be cognizant of any of the facts or to have means of knowledge in relation to the matters as to which an examination is hereby required to be made, and shall cause same to be reduced to writing. If the insurance commissioner shall be of the opinion that there is evidence sufficient to charge any person with the crime of arson or other willful burning, he shall cause such person to be arrested and charged with such offense, prosecuted and bound over to the circuit or criminal court of the county where such fire occurred, and shall furnish to the attorney-general of the district all such evidence, together with the names of the witnesses, and all information obtained by him, including a copy of all pertinent and material testimony taken in the case.

"Sec. 3. Be it further enacted, that when conducting an examination or investigation provided for in this act, the insurance commissioner, or his deputy, or any other officer authorized by this act to conduct such investigation, shall have all the power of a trial justice in this State for the purpose of summoning and compelling attendance of witnesses to testify in relation to any matter which is by the provisions of this act a subject of inquiry and investigation, and may adminis-

Rhinehart v. State.

ter oaths and affirmations to persons appearing as witnesses before them; and false swearing by any witness in any manner or proceeding aforesaid shall be deemed perjury and punished as such.

"Sec. 4.   Be it further enacted, that the insurance commissioner, or his deputy, or any of the officers authorized by this act, to investigate fires, shall have the right and authority, at all times of the day and night, in performance of the duties imposed by the provisions of this act, to enter upon and examine any building or premises when a fire has occurred, and any other building or premises adjoining the same.   Any investigations held under the provisions of this act, may, in the discretion of the officers holding same, be private; and persons other than those required to be present may be excluded from the place where such investigation is held, and witnesses may be kept separate and apart from each other, and not allowed to communicate with each other until they have been examined.

"Sec. 5.   Be it further enacted, that any officer referred to in this act who neglects or refuses to comply with any of the requirements of this act shall be guilty of a misdemeanor, and, upon conviction, shall be punished by a fine of not less than fifty nor more than two hundred and fifty dollars.

"Sec. 6.   Be it further enacted, that a tax of one-fifth of one per centum on the gross receipts of the fire insurance companies doing business in this State, shall be, and it is hereby levied for the purpose of providing

a fund for the defraying the cost of the enforcement of this act, to be collected by the insurance commissioner as other taxes on fire insurance companies are now collected in this State, and the insurance commissioner shall keep a separate account of all money received and disbursed under this act, and shall include same in his annual report. The insurance commissioner shall pay all necessary expenses, including counsel, expense of deputy, detectives and officers, incurred in the performance of the duties imposed by this act, out of said fund hereinbefore provided, and any surplus of said fund remaining at the end of any year shall be taken into the State treasury.

"Sec. 7. Be it further enacted, that this act shall take effect from and after its passage, the public welfare requiring it."

This record discloses that the storehouse of W. E. Wall & Son was destroyed by fire in August, 1907, and upon being notified of such fire by the sheriff of Montgomery county, the insurance commissioner, under authority given him by paragraph 2 of the first section of the statute, directed the sheriff to investigate the fire and report to him. The sheriff made such investigation and report, and soon thereafter Hon. Austin Peay, an attorney at law, residing in Montgomery county, was employed by the insurance commissioner to aid in further investigation of the cause, origin, and circumstances of the fire.

Rhinehart v. State.

On October 11, 1907, G. W. Sanders was indicted in the criminal court of Montgomery county, charged with arson in burning the property, and the case was set for trial on October 29, 1907. It also appears that said Sanders and certain other parties were also indicted in that court upon the charge of destroying plant beds and tobacco crops and that the cases against them were then pending for trial.

Afterwards Mr. T. Leigh Thompson, deputy insurance commissioner, went to Clarksville for the purpose of conducting an investigation of the cause of the fires in question. While so engaged he caused a number of citizens of the county to be subpoenaed as witnesses to appear before him and testify in relation to the subject of the inquiry, who failed and refused to appear upon advice of counsel for Sanders and the defendants in the other criminal cases mentioned, because it was believed that the investigation was being made to develop the facts in their cases to the prejudice of the defendants. This advice was given upon application of witnesses to counsel.

There was also then existing much lawlessness in Montgomery county, believed to be the work of a secret organized body of men, some of the members of which were suspected of being implicated in the fire in question. The commissioner, finding that by these matters witnesses subpoenaed by him were intimidated and prevented from obeying subpoenas and testifying, and that the investigation could not there be proceeded with,

adjourned it to his office in Nashville.   On November
26, 1907, he issued a subpoena to the sheriff of Mont-
gomery county for the plaintiff in error, Rhinehart,
and a number of other citizens and residents of that
county, to appear before him at his office in that city
and testify in relation to the cause, origin, and cir-
cumstances of the said fire.   Service was made on No-
vember 27, 1907, and under advice of the same counsel
the parties summoned again refused and failed to obey
the process.   Thereupon the subpoena, with the sher-
iff's return showing service, and a certificate of the
insurance ⸱commissioner indorsed thereon in these
words:

"I return this subpoena to the circuit court of David-
son county, and certify that Marcellus Rhinehart,
though duly served with this subpoena, as shown by the
officer's return hereon, failed and willfully refused to
attend and testify in obedience to this subpoena, and
this return is made that *scire facias* may issue as the
law provides against said witnesses.   This November
27, 1907.   T. Leigh Thompson, deputy insurance com-
missioner," was returned to the circuit court of David-
son county.

T. Leigh Thompson, deputy insurance commissioner,
also filed his affidavit, stating all the facts.   Upon these
papers a motion was there made in the name of the
State, upon relation of T. Leigh Thompson, against the
plaintiff in error, for a judgment for the penalty of $250
denounced by the statute.   Shannon's Code, sections

5609, 5610. Judgment *nisi* was entered, and *scire facias* awarded to the sheriff of Montgomery county against the plaintiff in error, requiring him to appear on December 23, 1907, and show cause, if any he had, why the judgment should not be made final. He appeared and made defense, first by motion to quash the proceedings for causes, which will be hereafter stated, and then by answer. Similar proceedings were had and begun against other witnesses in default. The motion against the plaintiff in error, Rhinehart, was selected as a test case, and was tried before the judge of that court; and the issues being found in favor of the State, judgment final for the penalty of $250 sued for was entered. From that judgment the plaintiff in error, having filed his bill of exceptions to the action of the court in the premises, prosecuted an appeal in the nature of a writ of error to this court, and has assigned a number of errors, of which we will now dispose.

First. The first contention of the plaintiff in error is that the statute under which the commissioner was acting is unconstitutional, and, therefore, the commissioner had no authority to issue a subpœna which he was bound to obey. The statute is attacked upon these grounds:

(1) That it violates article 2, section 17, of the constitution, providing that no bill shall become a law which embraces more than one subject, that subject to be expressed in the title.

121 Tenn—28

We understand the insistence of the counsel to be that the act contains two distinct subjects, namely, the detection of incendiary fires and the imposition of a tax upon insurance companies, and that neither of these subjects is stated in the caption.

We think that the statute embraces but one subject—the reduction of fire waste in Tennessee—and that this is distinctly expressed in the title. The provisions for the investigation of fires and the payment of expenses of such investigations are but the means by which that subject is to be accomplished. They are, therefore, not foreign to the reduction of fire waste, the subject and purpose of the act, but are germane and necessary to make it effective.

This all so clearly appears from the numerous opinions of this court construing the section of the constitution invoked that we do not deem it necessary to discuss it further. Cases directly in point are *State* v. *Yardley,* 95 Tenn., 546, 32 S. W., 481, 34 L. R. A., 656; *Railroad* v. *Crider,* 91 Tenn., 489-493, 19 S. W., 618; *Peterson* v. *State,* 104 Tenn., 127, 56 S. W., 834; *Memphis St. Ry.* v. *Byrne,* 119 Tenn., 278, 104 S. W., 460.

(2)   It is said that the provision in section 4 of the act, authorizing the insurance commissioner or his deputy at all times, in performance of the duties imposed by the act, to enter upon and examine any building or premises where a fire has occurred, or any other building or premises adjoining the same, is in conflict with section 7, art. 1, of the constitution, ordaining "that

the people shall be secure in their persons, houses, papers and possessions from unreasonable searches and seizures; and that general warrants, whereby any officer may be commanded to search suspected places without evidence of the fact committed, or to seize any person or persons not named, whose offense is not particularly described and supported by facts, are dangerous to liberty and should not be granted."

This provision is not involved in this case. No search of the premises of the plaintiff in error was or is sought to be made. Furthermore, if this provision were void, it would not affect the validity of the statute. It is only one of the means to be used in making an investigation. The statute is effective, and it is clear that the general assembly would have enacted it without this provision. The invalidity of one provision of a statute under these circumstances does not invalidate the entire statute, but it may be treated as a nullity and elided. *State* v. *Cummins,* 99 Tenn., 667, 42 S. W., 880; *Fite* v. *State,* 114 Tenn., 659, 88 S. W., 941, 1 L. R. A. (N. S.), 520; *Cummings* v. *Trewhitt,* 113 Tenn., 561, 82 S. W., 480; *State* v. *Willett,* 117 Tenn., 334, 97 S. W., 299; *Malone* v. *Williams,* 118 Tenn., 390, 103 S. W., 798, 121 Am. St. Rep., 1002. It being, therefore, immaterial to the constitutionality of the entire act whether this provision be valid or invalid, the plaintiff in error not being affected by it, it is not necessary and not proper now to pass upon it, and it is not done.

Cases bearing upon the provision of the federal constitution upon this subject, in which similar legislation has been sustained, are *Adams* v. *New York,* 192 U. S., 585, 24 Sup. Ct., 372, 48 L. Ed., 575; *Hale* v. *Henkel,* 201 U. S., 43, 26 Sup. Ct., 370, 50 L. Ed., 652. *Boyd* v. *United States,* 116 U. S., 616, 6 Sup. Ct., 524, 29 L. Ed., 746, seems to be adverse to such legislation.

(3)   Again, it is said that the provision contained in section 6 of the act, "that a tax of one-fifth of one per centum on the gross premium receipts of the fire insurance companies doing business in the State shall be, and is hereby levied for the purpose of providing a fund for defraying the cost of the enforcement of this act, to be collected by the insurance commissioner as other taxes on fire insurance companies are now collected in this State," is a tax levied upon a single class of taxpayers, is unequal taxation, and in conflict with section 28, art. 2, of the constitution, requiring that "all property shall be taxed according to its value, that value to be ascertained in such manner as the legislature shall direct, so that the taxes shall be equal and uniform throughout the State," and that "no one species of property from which a tax may be collected shall be taxed higher than any other species of property of the same value," and that, this provision for the expenses being one without which the general assembly would not have enacted the law, and being void, the entire statute is invalid.

Rhinehart v. State.

This clause of the constitution has no application to the charge here made upon fire insurance companies doing business in Tennessee. It has reference solely to assessments and taxes for revenue, made and levied upon property according to its value—*ad valorem* taxes. The burden imposed by section 6 of the statute, if it be a tax, is a privilege tax, and by the same section of the constitution here invoked, the general assembly is authorized to tax privileges in such manner as that body may from time to time direct. What are privileges, and the taxes that shall be imposed upon those exercising them, is a matter of which the legislature has a very wide discretion. *Kurth* v. *State*, 86 Tenn., 136, 5 S. W., 593. But it is not a tax in the sense of revenue. The statute is a police measure enacted by the general assembly, in the exercise of the police power of the State, and is well within that power. The protection of property from loss by fire, whether accidental or incendiary, by precautionary measures and detection and punishment of incendiaries, is one of the most frequent subjects of the exercise of the power. *Knoxville* v. *Bird*, 180 Tenn., 123, 49 Am. Rep., 326; *New York Board of Underwriters* v. *Whipple*, 2 App. Div., 361, 37 N. Y. Supp., 712; *Webster* v. *State*, 110 Tenn., 504, 82 S. W., 179; *Morrison* v. *State*, 116 Tenn., 544, 95 S. W., 494; Freund on Police Power, sections 33, 118, 141.

And reasonable charges, in the exercise of this power, may be imposed upon the class of citizens and taxpayers chiefly affected and benefited by the measure,

to bear the expenses of its enforcement, without being subject to the objection that it is either unequal taxation or vicious class legislation. Clearly a vigorous administration of this statute will afford fire insurance companies doing business in this State great protection, and be of more benefit to them than any other class of persons or corporations. The rule above announced, although not there applied, was recognized by this court in the case of *Reelfoot Lake Levee District* v. *Dawson,* 97 Tenn., 171, 36 S. W., 1046, 34 L. R. A., 725, where Judge Caldwell, in speaking for the court, says:

"Complainants contend, in next place, that if the act be not sustainable under the taxing power, it can be and should be sustained under the police power of the State. This latter power, like the former one, is an attribute of sovereignty; and it may rightfully have expression in the form of legislation, whenever needful for the promotion of public health, or the preservation of public safety, order, or well-being. Rules and regulations established in the proper exercise of this power often require the payment of money for certain specified objects, and, thereby, in some measure, partake of the nature of tax laws, though in primary purpose entirely distinct from them.

" 'The distinction between a demand of money under the public power and one made under the power to tax is not so much one of form as of substance. The proceedings may be the same in the two cases, though the purpose is essentially different. The one is made for regu-

Rhinehart v. State.

lation, and the other for revenue. If, therefore, the purpose is evident in any particular instance, there can be no difficulty in classifying the case and referring it to the proper power. . . . Only those cases where regulation is the primary purpose can be specially referred to the police power.' Cooley on Tax'n, 586, 587."

Judge Burrows, in his work on Taxation (section 77), says:

"When the amount of the fee is only such as would probably cover expenses of enforcing the regulations of the State as to the particular, it is under the police power; but where the fee is larger than is necessary for such purposes, and is executed with reference to revenue, the license is issued under the taxing power of the States, where it is contrasted with the property tax in those provisions which limit the power of the State to tax property otherwise than by a uniform system and according to values. But, whether mentioned in the constitution or not, the provisions as to equality and uniformity do not apply to taxes on license."

The case of *New York Board of Underwriters* v. *Whipple,* supra, is in point. There a statute providing for a fire patrol and imposing the expense of same upon insurance companies in proportion to the premiums received by them was held to be valid exercise of the police power.

The provision requiring the burdens to be paid by fire insurance companies is somewhat analogous to statutes

sustaining local assessments for the improvement of property, upon the ground that the adjoining property owners are benefited by the improvement to be made. The principle involved is very much the same. *Arnold* v. *Knoxville,* 115 Tenn., 204, 90 S. W., 469, 3 L. R. A. (N. S.), 837.

The provision that if any surplus of the charge to be collected by the insurance commissioner remains, after defraying all expenses incurred by him in making investigations as required by the act, shall be paid into the State treasury, does not make that charge a tax for revenue. It is impossible in advance to estimate what the expenses of such investigations will be, and the mere fact that a surplus may remain will not affect the validity of the statute. It is common, in statutes providing for inspection fees and special taxes, to provide that any surplus that may remain be paid into the public treasury, and such provisions have always been sustained. It is the only disposition that can be made of such unforeseen excess. *Postal Tel. & Cable Co.* v. *Taylor,* 192 U. S., 64-70, 24 Sup. Ct., 208, 48 L. Ed., 342; *Atl. & Pac. Telegraph Co.* v. *Philadelphia,* 190 U. S., 160, 23 Sup. Ct., 817, 47 L. Ed., 995; *Terre Haute* v. *Kersey,* 159 Ind., 300, 64 N. E., 469, 95 Am. St. Rep., 298; *Kennedy* v. *Montgomery County,* 98 Tenn., 180, 38 S. W., 1075.

It results, therefore, that the statute is constitutional and valid, and the assignment of error assailing it upon the grounds disposed of must be overruled.

Rhinehart v. State.

Second.   The plaintiff in error insists that the insurance commissioner has no right to conduct an investigation of a fire occurring in Montgomery county at his office in Davidson county, and therefore a subpoena issued by him requiring a witness to appear before him in the latter county was issued without authority, and void, and he was not bound to obey it.

We have read the statute in vain to find anything in it which tends to confirm this view.   It contains no provision which expressly or by implication requires the insurance commissioner to conduct the investigation in the county where the property was destroyed.   He is given broad authority to make the investigation, without any direction as to where it shall be conducted. When the law was enacted, under other statutes he was required to have an office in the capitol and to discharge certain duties there.   In the absence of a provision in this statute conferring other and new duties upon him, the presumption is that he was authorized to discharge them at his established office and where then existing laws required him to be.

While the conduct of an investigation in Davidson county may result in great inconvenience, amounting almost to oppression, in some cases, yet the legislature had the power to authorize it to be conducted there, and having done so, the power exists, and courts cannot interfere with it.   No elaboration of this point is necessary.

Third. It is further insisted, granting that the commissioner had a right to conduct an investigation in Davidson county, that he had no power to issue a subpoena to Montgomery county for witnesses. It is said that the statute confines his powers to those of a trial justice—a justice of the peace—and that a justice of the peace can only issue subpoenas for witnesses to his own or an adjoining county.

This contention is also unsound. The statute (section 3) vests in the insurance commissioner or his deputy "all the power of a 'trial justice' in this State for the purpose of summoning and compelling attendance of witnesses to testify in relation to any matter which is by the provisions of the act the subject of inquiry and investigation." There is no such officer in Tennessee as a "trial justice," but it is apparent a justice of the peace was meant. The authority given a justice of the peace in issuing subpoenas for witnesses by our statutes is to be found in three sections of the Code. These are as follows:

"Justices of peace may issue subpoenas for witnesses in an adjoining county, and such witnesses thus summoned are required to attend under the usual penalties." Shannon's Code, sec. 5615.

"Justices of the peace are vested with power to issue subpoenas for witnesses in any matter to be tried before him to his own or an adjoining county." Shannon's Code, sec. 5937, subsec. 4.

Rhinehart v. State.

"The magistrate before whom an information is made may issue subpoenas to any part of the State for witnesses on behalf either of the defendant or the State." Shannon's Code, sec. 7358.

The first section is to be found in the chapter upon the general subject of procuring the attendance and testimony of witnesses; the second, in the chapter relating to the powers of justices of the peace; and the third, in the chapter relating to witnesses and the mode of securing their testimony in criminal proceedings. This statute (chapter 460, p. 1538, Acts of 1907), being a police measure, passed for the protection of life and property, and to facilitate the detection of those guilty of fraudulent and incendiary fires, and to aid in bringing them to punishment, the investigation provided for is more a criminal proceeding than a civil one, and it was clearly the intention of the general assembly to confer upon the commissioner all the power vested by law in the justices of the peace to require witnesses to appear before them and testify in relation to crimes committed. This is the only reasonable construction that can be placed upon the statute. Without such authority, the commissioner would in many instances be wholly unable to make an investigation. The act must be given a broad and liberal construction, as remedial statutes always are, to effect the purpose of its enactment.

Fourth. It is next insisted that the statutes denouncing a penalty against witnesses for failure to appear

in obedience to the service of a subpoena do not apply to this case, and the circuit court of Davidson county had no jurisdiction to render judgment against plaintiff in error.

We think otherwise. The statutes upon the subject are as follows:

"Every witness legally bound to appear as herein directed shall appear accordingly and continue to attend from day to day and from term to term until discharged by the court or the party at whose instance he was summoned.

"In default thereof he forfeits to the party at whose instance the subpoena issues the sum of $125, to be recovered by *scirc facias;* and he is further liable to the action of the party for damage sustained for want of his testimony.

"The attendance of witnesses in criminal cases is enforced in the same way, subject to the same rules, except that the penalty for failing to attend is $250."

Shannon's Code, secs. 5608, 5609, 5610.

"If a witness fails to appear when summoned before a justice of the peace or commissioner, the subpoena is returned to the circuit court of the county with indorsement of such failure made thereon by the justice or commissioner, and *scire facias* issues as in other cases."

Shannon's Code, sec. 5613.

The statute under which the commissioner was proceeding vested in him all the powers of a justice of the

Rhinehart v. State.

peace to issue subpoenas for witnesses and compel their attendance before him to testify in the investigation which he was authorized to make. It follows that all statutes providing for the enforcement of this authority are applicable to proceedings before him. It could not have been intended by the general assembly to vest him with the authority of a justice of the peace to issue subpoenas, and yet withhold the means of enforcing the attendance of the witnesses. Such a construction would be absurd and unreasonable.

It may be, as said for the plaintiff in error, that the appearance of witnesses could be enforced by attachment; but this is immaterial. The law also provides that their appearance may be compelled by enforcing the penalties denounced against defaulting witnesses. The State of Tennessee, through its officer, the insurance commissioner, upon whom the duty of enforcing this police measure was imposed, had the right to compel the appearance of the plaintiff in error as a witness to testify in relation to the fire under investigation. The failure of the witness to appear was prejudicial to the State in the enforcement of laws made for the protection of property and the punishment of crime, and the motion was properly made in its name to recover the penalty, and, when collected, it will be covered into the public treasury. The motion could have been made, and properly should have been made, in the name of the State, without the intervention of the commissioner as relator, because the latter had no

interest in the matter, and no relator was necessary; but his name, being mere surplusage, will not affect the action, the State being the real party in interest.

Fifth. The plaintiff in error offers in excuse for his failure to obey the subpoena that the commissioner was exceeding his authority in investigating matters not pertinent to the fire in question.

We find upon this record that the insurance commissioner was conducting the investigation of a fire in good faith and in strict discharge of the duties imposed upon him by the statute. It was immaterial that one Sanders had been indicted upon the charge of burning property. The commissioner had nothing to do with that. The indictment did not conclude the question as to the cause, origin, and circumstances of the fire, nor who, if any one, was guilty of fraud or arson in the matter. The investigation might have developed that Sanders had no connection with it, and that other parties, then unsuspected, were guilty. It was the duty of the commissioner to discharge the duties imposed upon him, and it appears that he was doing so with reasonable diligence under the circumstances attending the case.

But, whether the commissioner was acting in good faith or not, the plaintiff in error had no discretion in the matter. It was his duty to obey the subpoena. It would be impossible to conduct a legal proceeding, if every witness summoned could determine for himself whether or not his evidence was material or whether

he should attend.   Advice of counsel in such cases is no defense—certainly not in this case, because it appears that the witness sought the advice of the counsel for Sanders, and clearly disobeyed the subpoena in his interest.

We think, upon the whole record, that the insurance commissioner had the power to issue the subpoena which was served upon the plaintiff in error, requiring him to appear before him in his office at Nashville; that the plaintiff in error willfully disobeyed this process; that the circuit court of Davidson county had jurisdiction of a motion to collect the penalty of $250 denounced against defaulting witnesses summoned in behalf of the State; and, the plaintiff in error having wholly failed to show any good excuse or cause why the penalty should not be enforced, the judgment of the trial court to that effect should be affirmed, with costs.