STATE *ex rel.* CITIZENS OF WILSON COUNTY *v.* LEBANON & NASHVILLE TURNPIKE CO.*

*(Nashville.* December Term, 1924.)

1. JUDGMENT. Parties sought to be concluded by former judgment must have sued or been sued in same capacity or character to enforce same right.

In order that a judgment operate as *res judicata,* the parties sought to be concluded must have sued or been sued in both cases in the same capacity or character and to enforce the same right. (*Post, pp.* 154, 155.)

2. JUDGMENT. Actions against individuals not res judicata as to similar questions in subsequent suit by State at relation of defeated parties.

Former judgments against individuals, involving rights of turnpike company, *held* not *res judicata* in subsequent action by State on relation of same individuals, though similar issues were involved. (*Post, pp.* 154, 155.)

Cases cited and approved: Harris v. Columbia Water, etc., Co., 114 Tenn., 328; Memphis City Bank v. Smith, 110 Tenn., 337; Melton v. Pace, 103 Tenn., 484.

3. JUDGMENT. Suit by State on relation of individuals held not private suit because relators may be taxed with costs.

Injunction suit by State on relation of individuals to restrain unlawful exactions of turnpike company·can be brought only by authority of some representative of the State under Thompson-Shannon Code, section 5165 et seq., and is in no sense a. private suit, though relators are liable for costs. (*Post, pp.* 155-158.)

Acts cited and construed: Acts 1835-36, ch. 15; Acts 1847-48, ch. 200; Acts 1849-50, ch. 49.

Cases cited and approved: State ex rel. v. White's Creek Turnpike Co., 3 Tenn., Ch., 163; State v. McConnell, 71 Tenn., 332; State ex

rel. v. Agee, 105 Tenn., 588; State ex rel. v. Lebon & Nashville Turnpike Co., 61 S. W., 1096.

Case cited and disapproved: New Hampshire v. Louisiana, 108 U. S., 76.

Case cited and distinguished: State ex rel. v. Turnpike Co., 112 Tenn., 615.

Code cited and construed: Sec. 5165 (T.-S.).

4. **TURNPIKES AND TOLL ROADS. Turnpike company cannot dispossess itself of franchises or property necessary to operation.**

Turnpike company, charged with the performance of public duties and granted powers for public purposes, cannot dispossess itself of those franchises, or property necessary to the discharge of such duties. (*Post, pp.* 158-160.)

Acts cited and construed: Acts 1887, ch. 198; Acts 1881, ch. 118; Acts 1899, ch. 196.

Cases cited and approved: Knapp v. Golden Cross, 121 Tenn., 212; State v. Butler, 83 Tenn., 104.

Code cited and construed: Secs. 1796, 2043 (T.-S.).

5. **COUNTIES. Have only powers granted by statute.**

The powers of counties, except those necessarily implied, must be found within statutory provisions made by legislature. (*Post, p.* 160.)

6. **TURNPIKES AND TOLL ROADS. Turnpike company held not authorized to sell to county portion of property, and thereafter operate a greater number of toll gates than permitted by law.**

Property and franchises of a turnpike company, chartered by Loc. Acts 1835-36, chapter 15, as amended by Acts 1847-48, chapter 200, cannot be purchased by county except in compliance with Thompson-Shannon Code, section 1796 (Acts 1881, chapter 118, Acts 1899, chapter 196), and such company, selling a portion of its property to

county, cannot operate a greater number of toll gates on remaining part than is authorized by law.  (*Post, p.* 160.)

Case cited and distinguished: Burnett v. Maloney, 97 Tenn., 697.

7. **COUNTIES.** One dealing with county bound to notice limitations of authority.

One dealing with a county is bound at its peril to take notice of the limitations of its authority.  (*Post, pp.* 160, 161.)

Case cited and approved: Kreis & Co. v. City of Knoxville, 145 Tenn., 297.

8. **TURNPIKES AND TOLL ROADS.** Turnpike company selling part of property cannot maintain more than proportionate number of toll gates.

Under Acts 1899, chapter 196 (Thompson-Shannon Code, section 1796), a turnpike company owning thirty miles of turnpike on which it was allowed to maintain six toll gates, on selling to county all but sixteen and one-third miles, can maintain not more than three toll gates, but may designate location of particular gates so long as provisions of charter or statute are not violated.  (*Post, pp.* 161, 162.)

Acts cited and construed: Acts 1899, ch. 196.

Code cited and construed: Sec. 1796 (T.-S.).

---

*Headnotes 1. Judgments, 34 C. J., Section 1417; 2. Judgments, 34 C. J., Section 1459; 3. Judgments, 34 C. J., Section 1459. 4. Toll Roads, 38 Cyc., p. 384; 5. Counties, 15 C. J., Section 51; 6. Toll Roads, 38 Cyc., p. 386; 7. Counties, 15 C. J., Section 233; 8. Toll Roads, 38 Cyc., p. 386.

---

FROM WILSON.

---

Appeal from the Chancery Court of Wilson County.— Hon. J. W. Stout, Chancellor.

A. A. ADAMS and THOS. B. FINLEY, for relators.

W. S. FAULKNER and R. T. SMITH, for Turnpike Co.

MR. CHIEF JUSTICE GREEN delivered the opinion of the Court.

This suit was brought in the name of the state of Tennessee, by Hon. Ridley Mitchell, the district attorney general, on the relation of five citizens of Wilson county, against the Lebanon & Nashville Turnpike Company, a corporation organized under the laws of this State.

The original bill, on account of various matters stated therein, sought a forfeiture of the charter of the defendant company, and, in the event that relief was denied, asked that the defendant be restrained from maintaining more than three toll gates on the turnpike now operated by it, prayed that the defendant be required to close and abolish its fourth toll gate going west from Lebanon, and prayed for other relief not necessary to be noticed now. An amended bill was subsequently filed, bringing forward some new matters.

Both bills were answered by the defendant and proof taken. Prior to the hearing before the chancellor, a number of questions were eliminated by consent of parties. The remaining questions were disposed of by the chancellor, sitting also as a jury, and he decreed among other things that the defendant did not have the right to maintain the fourth toll gate from Lebanon as now located.

State ex rel. v. Turnpike Co.

A motion for a new trial and a motion in arrest of judgment were respectively made and overruled, and the defendant appealed to this court.

The only question brought up on this appeal, except a question of procedure, is the right of the defendant company to keep its fourth toll-gate from Lebanon as now located, or its right to keep four toll gates on the turnpike it now owns.

The preliminary question of procedure above referred to arises upon the defendant's insistence that the relators upon whose information this suit was brought are precluded by former judgments against them from appearing as relators herein.

It seems that the most of these relators have had previous litigation with the defendant company over the right of the defendant to exact tolls from them for travel over this turnpike. In these several suits one or more of the questions herein presented were made by these gentlemen; they then being defendants. These suits appear to have resulted favorably for the turnpike company. It is therefore urged that these questions are *res adjudicata* as to these parties, and that they are thereby estopped to come in, even as relators, and undertake to litigate such questions again.

This argument is not well founded. These parties do not appear in the same capacity in this suit in which they appeared in the suits brought against them by the turnpike company. In this case they are relators in a suit of the State of Tennessee. In the other cases they were individual defendants in suits brought by the turnpike company.

In order that a judgment may operate as *res adjudicata,* it is essential that the parties sought to be concluded should have sued or been sued in both cases in the same capacity or character and to enforce the same right. *Harris* v. *Columbia Water, etc., Co.,* 114 Tenn., 328, 85 S. W., 897; *Memphis City Bank* v. *Smith,* 110 Tenn., 337, 75 S. W., 1065; *Melton* v. *Pace,* 103 Tenn., 484, 53 S. W., 939.

This is not the suit of individuals. It seeks relief not to be attained by individuals, but only by the sovereign. This suit was brought upon consent of the district attorney general, indicated by his signature to the original bill. It is a suit for the benefit of the whole people, not for the benefit of the relators. It can only be brought by authority of some representative of the state. Thompson's-Shannon's Code, section 5165 et seq.

It is a mistake to say that—"such a proceeding is in any sense a private suit. It is not so in the beginning, nor in the progress of the case does it ever become such. It remains as it began, the suit of the government; the relators, however, upon whose information it is instituted on their complaint, being liable for the cost." *State ex rel.* v. *Turnpike Co.,* 112 Tenn., 615, 79 S. W., 798.

To the same effect see *State ex rel.* v. *White's Creek Turnpike Co.,* 3 Tenn. Ch., 163; *State* v. *McConnell,* 3 Lea, 332; *State ex rel.* v. *Agee,* 105 Tenn., 588, 59 S. W., 340.

*New Hampshire* v. *Louisiana,* 108 U. S., 76, 2 S. Ct., 176, 27 L. Ed., 656, is not in point. While that was a suit in the name of a State, it was prosecuted purely for the benefit of a private individual. The court merely

refused to countenance a subterfuge by which an individual sought to sue a sovereign state.

The defendant, the Lebanon & Nashville Turnpike Company, was chartered by chapter 15 of the Local Acts of 1835-36. The original charter contained the following provisions:

"And when the said road shall be thus finished for the distance of seven miles from Nashville or Lebanon, the president may apply to the Governor, who shall appoint three discreet and disinterested persons to view said road, and on the report of any two of them, that the road has been completed for the distance aforesaid, in the manner prescribed by this act, it shall be the duty of the Governor to issue his certificate under the seal of the State, authorizing the company to erect two toll gates, one not nearer than one mile of the limits of the corporation of Nashville or Lebanon, and the other not nearer than within five miles of the first, and to appoint a toll gatherer for each gate.   .  .  .

"And so soon as said road shall be completed five miles from the second gate as herein directed, a similar application shall be made to the Governor, and the same proceedings had as before directed; and so on for every five miles until said road shall be completed: Provided, there shall not be more than six gates between Nashville and Lebanon; provided, also, that no gate shall be set up until all the road is under contract, or one hundred thousand dollars of the stock actually taken."

Defendant's charter was amended by chapter 200 of the Acts of 1847-48, which contained, among other things, the following provision:

"That the directors of said company may remove and change the location of the gates on said road, by the action of the board, as they may think proper from time to time: Provided, 1st, that no gate shall be placed nearer than three miles to another; and 2nd, that the gates shall not be so located that the travel upon the Stewart's Ferry arm will have to pay at more than two gates to Nashville, and if a gate should be placed on the said arm, it shall not be more than one hundred feet from its junction, nor shall the travel upon said arm, which may turn upon the east end of the main road pay at the first gate on the same, nor shall the travel on the main road from the east, which may turn upon the said arm pay upon the same. There shall never be but two gates from the point of intersection of the said arm and the main road to the city of Nashville, nor shall there be any gate on the said arm, except as herein provided."

Chapter 49 of the Acts of 1849-50 undertook to repeal chapter 200 of the Acts of 1847-48 authorizing defendant to change the location of its gates. But the Act of 1849-50 has been heretofore held unconstitutional, and need not be further mentioned. *State ex rel.* v. *Lebanon & Nashville Turnpike Co.,* (Tenn. Ch. App.), 61 S. W., 1096, affirmed orally by this court.

Prior to 1902 the defendant company maintained three toll gates in Davidson county and three toll gates in Wilson county. In 1902, it sold that portion of its turnpike located in Davidson county to that county. Just prior to the sale, and evidently in contemplation thereof, the defendant moved the fourth gate from Lebanon and the third gate from Nashville, which had always be-

fore been located in Davidson county, across the line into Wilson county.

The proof shows that the length of the turnpike originally was thirty miles. Since the sale of that portion lying in Davidson county, the defendant has remaining sixteen and one-third miles of turnpike in Wilson county, upon which it keeps four gates.

The defendant justifies the four gates under the amendment to its charter (chapter 200 of the Acts of 1847-48), heretofore quoted, permitting it to change the location of its gates as it may think proper, provided that no gate shall be placed nearer than three miles to another. Going out of Lebanon from the first gate to the second gate is four and two-fifths miles; from the second gate to the third gate is five and three-fifths miles; and from the third gate to the fourth gate is four and three-sixteenths miles.

This contention, while plausible, cannot be maintained.

The general rule is that a corporation charged with the performance of public duties or possessing powers which are given in return for some public good cannot dispossess itself of those franchises, or of that property necessary to enable it to discharge those duties. 2 Morawetz, Private Corporations, sections 924 et seq., 930, 934; 4 Thompson on Corporations, sections 5355, 5373, 5374; *State* v. *Butler,* 15 Lea, 104. This rule applies to turnpike corporations. 38 Cyc. 384, and cases cited.

By chapter 198 of the Acts of 1887 (Thompson's-Shannon's Code, section 2043), public service corporations were permitted to lease and dispose of their property

and franchises to other corporations engaged in or carrying on the same general business; this legislation being applicable to *quasi*-public corporations only. *Knapp* v. *Golden Cross,* 121 Tenn., 212, 118 S. W., 390. We have other legislation to the same effect which need not be noticed.

Such statutes as the foregoing, of course, did not confer on the defendant company any right to sell half of its property and its franchises to Davidson county, nor did they confer on Davidson county any authority to make such a purchase.

By chapter 118 of the Acts of 1881 authority was given to turnpike companies, chartered by the laws of this State, to convey their property and franchises to the county courts of the counties in which said property lay. By chapter 196 of the Acts of 1899 the county courts of such counties were given authority to pay for such turnpike properties by the issuance of county warrants, or otherwise, except by bonds.

These provisions of chapter 118 of the Acts of 1881 and chapter 196 of the Acts of 1899 are thus codified in Thompson's-Shannon's Code, section 1796:

"Any turnpike road company heretofore or hereafter chartered by the laws of this State shall have the right to convey its roadbed, bridges, tollhouses, rights of way, franchises, etc., to the county court of the county in which said roadbed lies. And the county court may pay for the same by county warrants, or otherwise except by bonds, and any turnpike company may sell and dispose of any part of its roadbed and interests to the county court of the county in which the same may lie, without

in any way forfeiting or affecting its charter rights, road-bed, bridges, tollhouses, rights of way, franchises, etc., in the remaining portion which it may not have disposed of; provided, that nothing in this act shall be so construed as to allow any turnpike company to operate a greater number of gates to its mileage than is now authorized by law.''

It therefore seems that the defendant company was not entitled to sell its property and franchises in Davidson county to that county, except upon the terms stated in the section of the Code just quoted.

Whatever may have been the rights of defendant company, however, it is entirely certain that Davidson county had no authority to undertake this purchase, except upon the terms provided in the statutes.

'' 'Counties owe their creation to the statutes, and the statutes, confer on them all the powers which they possess, prescribe all the duties they owe, and impress all the liabilities to which they are subject.' . . .

''It has been tersely said 'the limits of all powers of counties, except those necessarily implied, must be found within the four corners of the statutory provision made by the legislature.' 4 Am. & Eng. Enc. L., 389.'' *Burnett* v. *Maloney*, 97 Tenn., 697, 37 S. W., 689, 34 L. R. A., 541.

One dealing with a municipality is bound at his peril to take notice of the limitations of its authority. *Kreis & Co.* v. *City of Knoxville*, 145 Tenn., 297, 237 S. W., 55.

So, regardless of its own power, when the defendant company undertook to deal with Davidson county, it

had to contract with that county on the terms prescribed by the legislature.

It follows, therefore, that when the contract for the sale of its Davidson county property and franchises was made between defendant and Davidson county, there entered into this contract the denial, contained in chapter 196 of the Acts of 1899, of authority, after the sale, to this turnpike company, "to operate a greater number of gates to its mileage than is now authorized by law."

By its original charter, which was in this respect never amended, the defendant company was restricted to the maintenance of six toll gates between Nashville and Lebanon. The distance was thirty miles. While by amendment of 1847-48 the defendant company was permitted to change the location of its gates, so long as no two were brought nearer together than three miles, the number of gates permitted on the whole road was never changed.

Six gates to thirty miles. That is an average of one gate to five miles. When the mileage was reduced, under the act quoted the gates had to be reduced in proportion.

The mileage of defendant company has now been reduced to sixteen and one-third miles. Upon its present mileage it can only be allowed to maintain three gates. A greater number of toll gates on this mileage would be "a greater number of gates to its mileage than is now authorized by law" in direct contravention of the provisions of the statute quoted.

As we understand the decree of the chancellor, he directed the removal of the fourth gate from Lebanon. We think it is immaterial which of its gates the de-

151 Tenn.—11.

fendant company removes. It is only entitled to maintain three gates. It can locate them as it chooses so long as no two of them are nearer to each other than three miles, and so long as the first one does not approach the corporate limits of Lebanon nearer than one mile.

Thus modified, the decree of the chancellor will be affirmed. The defendant will pay the cost of this court, and the costs below will remain as taxed by the chancellor.