STONE *et al. v.* TOWN OF CROSSVILLE *et al.*

(*Knoxville,* September Term 1947, May Session 1948.)

Opinion filed June 29, 1948.

20

TOLLETT & TOLLETT, of Crossville, for appellants.

KEYES & REDMOND, of Crossville, for appellees.

MR. CHIEF JUSTICE NEIL delivered the opinion of the Court.

The complainants, as taxpayers and resident citizens of Cumberland County, filed their original injunction bill in the chancery court attacking the validity of certain "Hospital Bonds" issued, or intended to be issued by Cumberland and the Town of Crossville, to the amount of $60,000; also a bond issue of $35,000 by the Town of Crossville, and another bond issue of $150,000 to be secured by revenue from the hospital, said bonds being referred to as "Revenue Bonds."

The bill prayed for an injunction to restrain the issuance and sale of these bonds. It was charged that Chapters 83 and 84 of the Private Acts of 1947 (validating the proceedings of the county court authorizing the issuance of $60,000 of Hospital Bonds," and validating the proceedings of the Board of Commissioners of the Town of Crossville, authorizing the issuance of $35,000 "Hospital Bonds") were unconstitutional.

The bill further charges that the aforesaid Private Acts are invalid for the following reasons, to wit:

(1) "The date of the bond issue is omitted from the validating Act, Chapter 83, of the 1947 Private Acts" (referring to the $60,000 bonds of the county).

(2) "Said validating Act suspends the general law contrary to the provisions of Article 11, Section 8, of the Constitution of Tennessee."

(3) That the proposed hospital "is to be owned by the Town of Crossville and the County will not own any part or portion thereof, by reason whereof a tax levy for the payment of said bonds and interest thereon will not be

for a county purpose as required by Article 2, Section 29, of the Constitution of Tennessee,'' etc.

The second validating Act, Chapter 84 of the Private Acts (referring to the $35,000 bonds of the Town of Crossville), is attached upon substantially the same grounds, except ground No. 3.

The alleged invalidity of $150,000 Hospital Revenue Bonds is grounded upon the general charge that Chapter 81 of the Private Acts of 1947, authorizing their issuance, is unconstitutional because it ''unlawfully attempts to include by reference a part of the provisions of Chapter 10 of the Public Acts, Extra Session of 1935,'' and that it undertakes to and does suspend the general law.

The defendants demurred to the bill upon the grounds that the said Acts referred to are in all respects valid and constitutional; that the omission from the Acts of the date of the bonds to be validated is not material; that the bill discloses that the issuance of the $60,000 of bonds by the County is for the benefit of all the citizens of the County and hence is a county purpose.

Referring to the alleged invalidity of Chapter 81 of the Private Acts of 1947, which authorizes the ''Revenue Bonds'' of $150,000, and which are dated July 1, 1947, the demurrants aver that ''said law is complete in all respects. The fact that said law includes by reference a number of sections from Chapter 10 of the Acts of 1935, Extra Session, does not in any way invalidate same since the principle of legislation by reference has been clearly upheld by the Tennessee courts.''

The Chancellor sustained the demurrer and complainants prayed and were granted an appeal to this Court.

We deem it unnecessary to copy in this opinion the several assignments of error. Suffice it to say they pre-

sent the same questions which were made by the demurrer and which the Chancellor decided adversely to the contention of the complainants. The case has not been free from difficulty, but upon full consideration of the authorities we think the decree of the Chancellor is correct.

The argument of complainants' counsel is directed chiefly to the insistence that these Private Acts suspend the general law in violation of Article 11, Section 8, of the Constitution; "that county courts have only such powers as are vested in them by statute" (citing many of our cases); that Cumberland County, in violation of law, seeks to lend its credit to the Town of Crossville.

We are not unmindful of the fact that the county courts can exercise no power that is not conferred expressly or by clear implication, by the Legislature. This proposition is so well settled that cases need not be cited to support it.

The background to the movement to build a hospital to serve the people of Cumberland County is seen in Chapter 184 of the Public Acts of 1945 and carried in the Code as Sections 4406.127 to 4406.147. The title to the Act is in substance, "An Act to authorize counties of this state to construct, acquire, improve, operate and maintain public works, undertakings and projects; prescribing the mode of procedure for and regulating the issuance and sale of bonds and other obligations to finance such works," etc.

Now by express provision of the Act, subsection (d) of Section 1, "hospitals" are included under the term "Public Works Project." The Act expressly referred to the "Federal Aid Act" which provided for public works to reduce and relieve unemployment.

Now in the instant case it appears that the Town of Crossville and the County Court of Cumberland County, acting by and through their governing authority, adopted resolutions for the issuance and sale of the bonds referred to in this opinion, as authorized by the above mentioned "Public Works" statute. They sought the aid, by contract, of the Reconstruction Finance Corporation in the issuance of the $150,000 revenue bonds. But this Federal Agency declined to go along with them unless the Town of Crossville was adjudged to be the owner, or have legal title to the hospital. The resolution of the County Court was changed to meet this requirement.

In 1947 the Legislature passed the validating Acts herein assailed by the complainants. It is complainants' insistence that the said validating Acts suspend the general law as found in Chapter 184 of the Public Acts of 1945, known as the "Public Works" statute. Code Sections 4406.127 to 4406.147, *supra*.

Under Section 3 of this statute, subsection (b), and under the heading "Powers of counties," the following provision confers authority upon counties and municipalities to construct "Public Works": "To operate and maintain any public works project for its own purposes or for the benefit and use of its inhabitants." Subsection (c) provides: "To accept from any federal agency grants for or in aid of the construction of any public works project." Subsection (d) provides for the issuance of bonds "to finance such construction." Subsection (e), "To assess, levy and collect unlimited *ad valorem* taxes on all property subject to taxation to pay the bonds, and the interest thereon, issued to finance any public works project."

We must keep in mind the express provision that "Public Works" includes "hospitals." We find from Section 6 of said Act that "No vote of the qualified electors upon a proposition for the issuance of bonds by any county under this act shall be necessary if the initial resolution is adopted by at least three-fourths, ($\frac{3}{4}$) of all the members of the governing body of such county."

The validating Act (Chapter 83 of the Private Acts of 1947) provides as follows: Section 3—'That no election shall be required in connection with the issuance of said bonds notwithstanding the provisions of any law to the contrary." Section 4—"That the provisions of this Act shall be additional and supplemental to powers conferred upon Cumberland County by any other law, and shall not constitute a limitation upon any such powers."

Complainants contend that the bill shows a total lack by the County Court to comply with the general law. Following this, the counsel assail the validating Act for the reasons herein mentioned and especially upon the ground that the said Acts are incomplete in that they fail to indicate what Acts are validated and that the dates of the bond issues are omitted. Able counsel for complainants concede that they find no case holding that the date of the bond issue must be set forth in the validating statute. We think the true test is whether the bonds thus purportedly validated are identified with reasonable certainty.

The bonds involved in the present controversy are capable of identification. The resolution which authorized the $60,000 bond issue was the only one in existence at the time of the passing of the validating statute. Moreover, the validating Act relates to bonds to erect a hospital to be owned by the Town of Crossville.

■ In 43 American Jurisprudence, sec. 109, page 359, the following appears: "Date.—It has been held that although a subdivision bond is erroneously dated or bears no date, its validity will not be affected if all the essentials necessary to give it legal and binding force have been complied with."

■ We find no merit in the contention that these validating Acts suspend the general law. The said Acts contain no provision repealing any provision of the general law; nor do they confer special benefits not enjoyed by other counties which may desire hospital facilities under the Public Works Project statute.

Conceding, but not deciding, that there may be some technical irregularity in the issuance of the bonds and provision for their liquidation, these validating Acts were enacted to put at rest any objection to their validity on that account.

■ In *Red River Furnace Co.* v. *Tennessee Cent. Railroad Co.*, 113 Tenn. 697, 725, 87 S. W. 1016, 1022, it is held, re-affirming *Lauderdale County* v. *Fargason*, 75 Tenn. 153, that "the prohibition of the constitutional provision referred to (Article 11, Section 8) had no rightful application to the contracting of obligations by which burdens are self-imposed by counties and incorporated towns." This was said in response to Fargason's contention (and the same insistence is made clear here) that the validating Acts were void because "they suspended a general law for the benefit of the particular counties, or else conferred a benefit on these counties inconsistent with the general law of the land." 113 Tenn. at page 724, 87 S. W. at page 1022.

To the same effect see *Todtenhausen* v. *Knox County*, 132 Tenn. 169, 177 S. W. 487, and cases cited.

28

It is next insisted that the bonds are not for a county purpose and their issuance will result in lending the credit of Cumberland County to the Town of Crossville. The contention is unsound. It clearly appears from the ordinance passed by the municipality that while the hospital is technically owned by it, yet the same "shall be for the benefit of all citizens of the County."

We see no constitutional objection to the county and city jointly erecting and operating a public works project, such as a hospital, where authority is conferred by law, as it is by the general statute, Chapter 183, Acts of 1945, and the fact that title to the property is in only one of them is immaterial.

There is no merit in the argument that the county is unlawfully lending its credit. The funds derived from the sale of county bonds is not loaned to the Town of Crossville. The ordinance of the town affirmatively recognizes that the county and every citizen thereof has a beneficial interest in the hospital. The rights of citizens to its use and benefits could be enforced by appropriate legal proceedings.

The Chancellor's decree finds full support in *Dodd et al.* v. *Roane County et al.*, 174 Tenn. 267, 124 S. W. (2d) 953. The facts in that case are almost identical with the instant case. The opinion, which was prepared by the late Special Justice EDWARD J. SMITH, deals with every question now under consideration by the Court. It was there held that the County of Roane was not lending its credit to the Town of Harriman in authorizing a bond issue to erect and operate a joint hospital, where the title to said hospital was vested solely in Harriman. Citing numerous authorities 174 Tenn. on page 274, 124 S. W. (2d) 953. It was further held

that the "acceptance of proceeds of bond issue would estop city from adopting policy of exclusion." Citing Public Acts of 1935, Chapters 10 and 11.

The validity of the "Revenue Bonds" issued in the sum of $150,000 is questioned by complainants upon the ground that said bonds are unauthorized and invalid by Chapter 81, Private Acts of 1947, or any other valid law. We think these bonds are entirely valid and binding under the authority of Chapter 10, of the Public Acts of 1935, Extra Session, and which is incorporated in Chapter 81, Private Acts of 1947, by express reference. The said Act (1935, *supra*) provides:

■■ "The governing body of a municipality issuing bonds payable exclusively from the revenue of a public works project shall prescribe and collect reasonable rates . . . " etc. Of course this Act must be considered in *pari materia* with the general law of 1945, Chapter 184, which authorizes counties and municipalities to operate public works, including hospitals. When the statutes are thus considered we find that the proceedings for the issuance and sale of these bonds is fully authorized and not in conflict with the general laws of the State of Tennessee.

■ There is no merit in the contention by appellants that the validating Act is void because it incorporated by reference Chapter 10 of the Acts of 1935. It is settled law in a number of jurisdictions that incorporation by reference is permissible when not expressly prohibited by constitutional provisions. In Sutherland on Statutory Construction, Volume 2, Section 5207, it is said: "A statute may refer to another statute and incorporate a part of it by reference."

Counsel for complainants have stressed the holding of this Court in *Southern* v. *Beeler*, 183 Tenn. 272, 195

S. W. (2d) 857, as authority for reversal of the Chancellor's decree. We think the case has no application to the questions made on this appeal and under the facts of this cause.

The Private Act assailed in *Southern* v. *Beeler, supra,* provided for the issuance of school bonds for the erection of county schools (outside the City of Knoxville) and made them a burden upon the taxpayers of Knoxville, contrary to express provision of the general school law.

All assignments of error are overruled and the decree of the Chancellor is affirmed.

All concur.