WILSON *et al. v.* BEELER *et al.*

(*Knoxville,* September Term, 1951.)

Opinion filed December 14, 1951.

Boyce Griffith, of LaFollette, for appellants.

Harry B. Brown, of Jellico, for appellees.

Mr. Justice Tomlinson delivered the opinion of the Court.

This is a suit by taxpayers of Campbell County alleging that Chapter 625 of the Private Acts of Tennessee for 1951 is unconstitutional. The bill seeks to prevent the issuance of county bonds which this Private Act purports to validate.

The Chancellor, without writing an opinion, sustained a demurrer and dismissed the bill, thereby holding that

the Private Act under attack is constitutional. The case is here on appeal of the taxpayers.

Chapter 184 of the Public Acts of 1945 is known as the "County Recovery and Post War Aid Act of 1945". That act empowers the Quarterly Court of each county in Tennessee to authorize and direct the issuance of the bonds of the county, without limitation as to amount, for the purpose of carrying out one or more of the public works projects mentioned in this statute including, among others, the building and construction of roads and highways of such county. The bonds are to be paid from ad valorem taxes to be levied upon all taxable property in the county or, as the Quarterly Court may direct, of such property in that portion of the county affected by the project.

After the Quarterly Court of any county has adopted a resolution authorizing the issuance of such bonds it is required by Section 5 of Chapter 184 to publish such resolution in full in some newspaper of the county or put the same in five conspicuous places in the county, if there be no such newspaper.

Section 6 of the Act forbids the issuance of the bonds authorized by the Quarterly Court resolution under the following conditions: "If * * * (2) a petition protesting the issuance of such bonds signed by at least twenty (20%) per cent of the qualified electors as aforesaid shall have been filed with the Clerk of the County within ten (10) days from the publication or posting, as the case may be, of the Initial Resolution, then no bonds shall be issued under this Act without the assent of a majority of the qualified electors therein voting upon a proposition for the Issuance of such bonds in the manner provided by the next following section."

On January 18, 1951 the Quarterly Court of Campbell County adopted the resolution hereinafter mentioned. More than a majority, but less than three-fourths, of all the members of that Quarterly Court voted in favor of that resolution. That resolution authorized the issuance of bonds of the county in the principal amount of $300,000.00 "under and pursuant to—Chapter 184 of the 1945 Public Acts of Tennessee—for the purpose of obtaining funds to pay the cost of constructing road(s) in and for Campbell County, Tennessee". This resolution provided for the levy of a tax "upon all the taxable property in" Campbell County for the purpose of providing funds with which to pay the interest and principal of said bonds. It provided for the distribution among the various districts of the county of the proceeds of the sale of the bonds after withholding a certain amount for road machinery and tools.

This Quarterly Court Resolution is not on its face in conflict with any of the provisions of the aforesaid public statute under which it was authorized, except that it did not direct the publication of the notice of the passage of the resolution. Nor was there any compliance with the requirements of Section 5 of this public statute by publishing the resolution in full in one of the two newspapers in the county, or by posting it at any place in the county.

Notwithstanding the failure of the Quarterly Court to comply with this requirement as to notice to the public, a petition protesting the issuance of these bonds was signed by a few more than one-third of the qualified voters of Campbell County, and filed with the Clerk of the County Court within ten days after the passage of the resolution that authorized and directed the issuance

of these bonds. Therefore, under the heretofore quoted Section 6 of Chapter 184, Public Acts of 1945, applicable alike to all counties, Campbell County was forbidden the power to issue the bonds in question, in the absence of assent thereto by a majority of the qualified voters in an election to be held for that purpose as required by this statute under which it was purported to issue these bonds.

With matters in the status stated, the Legislature on March 15, 1951 enacted Chapter 625 of the Private Acts of 1951. It is the constitutionality of that Act that is attacked by this taxpayers' suit. This private act purports to validate and legalize the bonds authorized by the aforesaid Quarterly Court resolution and to authorize their issuance and sale, and further provides that "no election shall be necessary in connection with said bonds", and directs the levy of a tax each year upon all taxable property in the county for the payment of the principal and interest of these bonds.

From that immediately above stated, it is obvious that Chapter 625 of the Private Acts of 1951 purports to extend to Campbell County alone the right and privilege of issuing bonds authorized by the general law, Chapter 184, Public Acts of 1945, without the assent of the voters in an election held for that purpose, notwithstanding a petition protesting the issuance of said bonds filed by more than twenty (20%) per cent of the voters in the manner required by this general law.

Thus it is that this Private Act purports to grant to Campbell County a right and privilege withheld from all the other counties of the State, and to impose upon the taxpayers of Campbell County a burden which under the general law, the premises considered, cannot be imposed upon the taxpayers of any other

county of the State. This is partial, class legislation forbidden by Article XI, Section 8 of our Constitution unless there be some reason for the discrimination. That reason need not affirmatively appear on the face of the statute, but it must exist. No reason is suggested, and, in the opinion of this Court, none can be suggested, for this discrimination. It is, therefore, an arbitrary and capricious discrimination; hence, obnoxious to Article XI, Section 8 of the Constitution.

■ Article XI, Section 8 of the Constitution applies to statutes affecting counties in their governmental capacities. A case much in point is *Berry* v. *Hayes,* 160 Tenn. 577, 28 S. W. (2d) 50. There it is held, 160 Tenn. at page 579, 28 S. W. (2d) at page 50: ''It is clear that this act is within the prohibition of Section 8, art. 11, in that it suspends a general law and grants immunities and exemptions to Williamson county which no other county may enjoy. It is arbitrary class legislation for which no possible justification can be conceived. There is no reasonable ground for granting an immunity to Williamson county which does not apply to every other county alike.''

Appellees rely strongly on *Stone* v. *Town of Crossville,* 187 Tenn. 19, 212 S. W. (2d) 678, to sustain the Private Act involved in the case at bar. They likewise rely upon *Carter* v. *Beeler,* 188 Tenn. 328, 219 S. W. (2d) 195.

*Stone* v. *Town of Crossville,* supra, did involve bonds to be issued for a hospital under the authority of Chapter 184, Public Acts of 1945. The Private Act there involved did propose to authorize the issuance of those bonds without the election which Chapter 184 of the Public Acts of 1945 required. In attacking this Private Act and the resolution of the Quarterly Court authorizing the issu-

ance of the bonds a number of questions not pertinent here were raised.

However, in so far as pertinent here, the facts in the case of *Stone* v. *Town of Crossville,* are these:—The hospital under the agreement made by the county with the Town of Crossville and under the plan adopted was to cost $245,000.00. Cumberland County obligated itself to contribute $60,000.00 by the issuance of bonds in that amount under the authority of Chapter 184 of the Public Acts of 1945. The Town of Crossville was to contribute $35,000.00 in the same manner. It was with reference to this contribution of the county and city, respectively, that the Private Act proposed to authorize the issuance of bonds without the election required by Chapter 184. In the case of the county, the Quarterly Court authorized such issuance by the affirmative vote of three-fourths of its members. The remainder of the funds, $150,000.00, was to be procured by the issuance of hospital revenue bonds. Under Chapter 10, Section 6 of the Extra Session of the 1935 Legislature, 4406.6 of Williams' Code, an election was not required for the issuance of bonds payable exclusively from the revenues of a public works project. *Stone* v. *Town of Crossville,* supra, 187 Tenn. at page 29, 212 S. W. (2d) at page 682, called attention to the fact that this Public Act of 1935 with reference to revenue bonds "must be considered in pari materia with the general law of 1945, Chapter 184, which authorizes counties and municipalities to operate public works, including hospitals".

Here then in *Stone* v. *Town of Crossville,* supra, there existed a situation not contemplated by the provisions of Chapter 184 of the Public Acts of 1945 in that only a small part of the expense of the project, rather than all of it, was to be paid by the bonds of the county or

city issued under the authority of that general law. Therefore, it is apparent that there was a logical reason for the discrimination made by the Private Acts involved in *Stone* v. *Town of Crossville*. As heretofore pointed out in this opinion, and as held in numerous cases, the discrimination made by a private act affecting a county in its governmental capacity does not violate Article XI, Section 8 of the Constitution if there is a reasonable basis for the discrimination. This is one reason why *Stone* v. *Town of Crossville*, is not applicable to the Private Act here involved.

In *Carter* v. *Beeler*, supra, the Private Act authorized the issuance by Bradley County of the bonds in question on condition that such issuance be approved by a majority of the qualified voters of the County. See, 188 Tenn. page 331, 219 S. W. (2d) 195. Clearly, therefore, that case is not in point on the question which is controlling here.

As so forcibly expressed in *White's Creek Turnpike Company* v. *Davidson County*, 3 Tenn. Ch. 396, 408-409: "Every case, therefore, where the constitutionality of a legislative act is drawn into question, is a grave and important matter; and while, on the one hand, the courts ought to entertain for the Legislature the highest respect, and to decide against their acts only from the clearest convictions of duty, on the other hand, where they are clearly satisfied the Constitution is violated, they have no other alternative but to declare that such act of Assembly is not law."

We are clearly satisfied that Chapter 625 of the Private Acts of Tennessee for 1951 is unconstitutional for the reasons heretofore stated. Hence, there is no other alternative but to so declare it.

The decree of the Chancellor will be reversed and the cause remanded for the entry of a decree overruling the demurrer of appellee defendants, and for such other proceedings and orders as may then be proper. The costs of the appeal will be adjudged against the appellees. The Chancellor will adjudge the costs below at the proper time.