C. C. Bayless *et al. v.* Knox County *et al.*

(*Knoxville,* September Term, 1955.)

Opinion filed December 9, 1955.

Rehearing denied February 3, 1956.

ANDERSON & ANDERSON and HODGES & DOUGHTY, all of Knoxville, for appellants.

EARL S. AILOR and FOWLER, ROWNTREE & FOWLER, all of Knoxville, for appellees.

MR. JUSTICE TOMLINSON delivered the opinion of the Court.

It is the duty of the Board of County Commissioners of Knox County to prepare annually a budget wherein is itemized in detail the various amounts of money required to maintain the county's business for the fiscal year, including the salaries to be paid various county officials. Chapter 183, Private Acts of 1937. The Quarterly Court was required by writ of mandamus to fix such tax rate as would meet the budget which was prepared and submitted in July, 1955 to the Quarterly Court. Thereupon, taxpayers filed this bill to enjoin the payment

of some of the items on the theory that some of them were not authorized by law, and others not authorized for the amount specified in the budget. The officials concerned were made defendants. Their separate demurrers were sustained and complainants allowed this appeal.

The bill alleges that these taxpayers unsuccessfully requested the Quarterly Court to institute this suit to enjoin allegedly unlawful appropriations and to collect county funds alleged to have been illegally paid to certain of the defendants. Knox County was made a party defendant to the end that judgment might be rendered in its favor for such amounts as may be due it from the respective defendants. In view of the refusal of the county, though requested to institute this suit, the proceedings by the taxpayers seems to be authorized by *Peeler* v. *Luther,* 175 Tenn. 454, 135 S. W. (2d) 926.

In the event the County is entitled to judgment against any of the parties the Court is authorized by Code Section 8713 to treat it as a party complainant for that purpose.

One item attacked is $7,500 for payment of the salary of the County Judge. That salary, including his compensation as financial agent of the County, was fixed by statute at $5,000 per year until the enactment of Chapter 79, Private Acts of 1951, whereby that salary, including such compensation, is increased to $7,500 per year. It is alleged that this statute violates Article 6, Section 7 of our Constitution, wherein it is provided that the salaries of the Judges of the Supreme and inferior Courts "shall not be increased or diminished during the time for which they are elected." The County Judge took office in September, 1950 for the term ending August 31, 1958. So it is that this 1951 statute did increase the total annual compensation of this official during the time for which he was elected. But the salary provided by

this statute included all the compensation which he should receive for his services as financial agent, as well as for his services as County Judge.

The salary of a County Judge for his services as a judge cannot be increased or diminished during the time for which he was elected. *State ex rel. Puckett* v. *McKee,* 76 Tenn. 24, 28. But his compensation for services as financial agent may be fixed each year by the Quarterly Court in such amount as that Court deems proper, Code Section 771, *State* v. *McKee,* supra, unless the amount of such compensation is fixed by statute. *Chambers* v. *Marcum,* 195 Tenn. 1, 255 S. W. (2d) 1. And, of course, the Legislature can at any time it elects change the amount to be allowed per annum a particular County Judge for his services as financial agent of the County. If it may give the Quarterly Court that authority, then, ipso facto, it may exercise that authority.

Therefore, if this 1951 statute had done no more than increase the amount of compensation which the County Judge of Knox County should receive as financial agent it would have been a valid enactment, notwithstanding the fact that such statute was enacted during the time for which he was elected. Must it be held invalid because the amount fixed is the total amount such Judge shall receive for his services as County Judge and as finance agent?

This 1951 statute is equally capable of three constructions, to wit: (1) That the Legislature intended to increase the salary of the Judge, as such; or (2) increase the amount of his salary as Judge and the amount of compensation for his services as financial agent; or (3) increase the amount of compensation to be received for his services as finance agent.

"It is always to be presumed that the General Assembly did not intend to pass an unconstitutional act,

and when an act is susceptible of two constructions or interpretations, one which will preserve and one which will destroy, that must be given it which will preserve it.'' *Kirk* v. *State,* 126 Tenn. 7, 13-14, 150 S. W. 83, 85.

 The rule just stated makes it the duty of the Court to construe this 1951 statute as being one intended only to increase the amount of compensation to be received by the County Judge for his services as financial agent. Such being the required construction, the result is that this 1951 statute must be adjudged valid, and the action of the Chancellor in so holding (by sustaining the demurrer) affirmed.

By Chapter 54, Private Acts of 1939, three General Sessions Courts for Knox County were created. That Act fixed the salary of each of the three General Sessions Judges at $3,600 per annum. These Judges were thereafter to be elected to serve for the unexpired term ending on August 31, 1950, and then for a new term of eight years. Chapter 148 of the Private Acts of 1947 purported to increase the annual salary of each of these Judges from $3,600 to $4,800. The Act provides that it is to take effect '' 'from and after the first day of the calendar month next succeeding the approval of this Act' ''. It was approved on February 7, 1947. Chapter 492 of the Private Acts of 1953 purports to again increase the salaries of these three General Sessions Judges from $4,800 to $6,000 per annum.

Appellant taxpayers insist that the 1947 Act violates the aforementioned Article 6, Section 7 of our Constitution in that it increases the salary of these Judges during the term in which they were elected, this term ending August 31, 1950. They also insist, and for the same reason, that Chapter 492 of the Private Acts of 1953 is invalid in that it proposes to increase the salary of each

of these Judges during the time for which they were elected, that time commencing in September, 1950 and ending August 31, 1958.

In the case of *Thrasher* v. *Lively,* 195 Tenn. 630 263 S. W. (2d) 497, it is held that a General Sessions Judge is a Judge of an inferior Court within the meaning of our Constitution; hence, that such judicial office falls within Article 6, Sec. 7 of our Constitution, forbidding the increase or decrease in the salaries of such Judge during the time for which he is elected. It is clear, therefore, that these General Sessions Judges who took office in September, 1950, for a term ending eight years thereafter, cannot legally receive the increase provided by Chapter 492 of the Private Acts of 1953. It is equally clear, and for the same reason, that the General Sessions Judges who were elected for a term ending August 31, 1950 could not legally take the increase provided by Chapter 148 of the Private Acts of 1947. The only question under this item, then, is whether the General Sessions Judges who took office in September of 1950 may legally receive the salary as increased from $3,600 to $4,800 by this 1947 Act.

Had this 1947 Act expressly provided that, commencing in September, 1950, the salary of each of the General Sessions Judges should be $4,800 instead of $3,600, it would clearly have been a valid enactment, because it would not have been an increase in salary during the time for which these Judges were elected, but an increase in the salary of the office, effective at the commencement of the next term.

The Legislature, in the enactment of this 1947 statute, clearly intended for the increase to take effect during the term for which these General Sessions Judges were elected. But it also necessarily intended for this in-

creased salary to remain in effect until it was validly changed by a subsequent enactment. Thus it was the intention of the Legislature, in the enactment of the 1947 statute, that this increased salary should apply to the General Sessions Judges who were elected for the terms commencing September 1, 1950. Is the entire Act to be invalidated because it undertakes to provide an increase in salary during a constitutionally illegal period of time (1947-1950), as well as during a constitutionally legal period of time (1950-1958)?

It is reasonable to conclude that the 1947 Legislature would have enacted this statute effective at the commencement of the next term with the illegal provision omitted. It does not seem reasonable to conclude the contrary, because, if the Legislature thought an increase in 1947 desirable, certainly it would think the same as to next term of the office.

If the illegal provision is elided, the effect of the Act is to increase the salaries of these Judges at the beginning of the next term, September 1, 1950. This illegal provision is easily severable. What then remains of the Act leaves it complete and capable of being executed in accordance with the intent of the Legislature. The Court should, therefore, elide the illegal provision and sustain the Act in so far as it applies to the term commencing September 1, 1950. *Rhinehart* v. *State,* 121 Tenn. 420, 435, 117 S. W. 508; *Hunter* v. *Conner,* 152 Tenn. 258, 279, 277 S. W. 71. The legal propriety of this conclusion is also supported by the fact that it accords with the rule that the Court's duty is to save, in so far as is constitutionally permissible, legislative enactments.

The items of the 1955 budget providing for the salaries of General Sessions Judges should, therefore, have specified $4,800 for the annual salary of each of these Judges,

instead of $6,000. An appropriation in excess of $4,800 for each such salary is unauthorized.

██ ██ The bill prays for a judgment in favor of the County against each of these Judges for the amount they have received in salary since September 1, 1950 that is in excess of the amount of salary authorized by statute; that is, a judgment for the difference between the $4,800 legally authorized, and the $6,000 illegally authorized.

The holding in *State for Use and Benefit of Lawrence County* v. *Hobbs,* 194 Tenn. 323, 330, 333, 250 S. W. (2d) 549, 553, requires a denial of this prayer. In that case it was insisted that a statute authorizing the payment of certain sums as salary was unconstitutional; hence, that a judgment in favor of the County should be rendered against the official for sums illegally paid by reason of this statute. This Court's reply to this insistence was:

"* * * While a citizen is presumed to know the law he is not presumed to know that a statute, which the Supreme Court presumes to be constitutional, is unconstitutional.

" '* * * and what no one could know prior to the determination by some judicial tribunal that the law was unconstitutional.'

"* * * 'But it is recognized that parties may so deal with each other upon the faith of such a statute that neither may invoke the aid of the courts to undo what they themselves have done.' "

Appellants assert that these General Sessions Judges, and because they were Judges, must be presumed to have known that the Act which purported to authorize the salary of $6,000 per annum is unconstitutional. Hence, that they did not receive this illegal excess in salary in good faith. Aside from the violence of such a presumption, this insistence is rejected in the Hobbs case. There

one of the officials involved in the payment of salary under that unconstitutional Act was the County Judge.

By Chapter 231 of the Private Acts of 1939 it is provided that all of the necessary expenses incurred by the solicitor for Knox County in the performance of his official duties shall be paid by the County. Such solicitor is required to submit a verified statement of these expenses supported by receipted bills, etc., in so far as possible. Such statement is to be examined, audited and approved by the County Judge. There is an item of $2,600 in the 1955 budget to cover these expenses for the fiscal year. The bill alleges that an appropriation for this item is illegal in that it amounts to nothing more than an increase in salary.

The statement that this item of $2,600 "is in fact an increase in salary" is only a conclusion of the pleader. The statute directed the expenses incurred by the county solicitor in performing the duties of his office be paid. Hence, it was the duty of the County Commissioners to include some amount in the budget to meet these expenses. If the amount specified in the budget, $2,600, is more than the expenses incurred during the fiscal year for which the appropriation is intended, then it must be presumed that only so much of the $2,600 will be paid out as necessary to meet these expenses.

The bill alleges that the County Attorney took office in September, 1954. It then asserts that "complainants are advised, believe and accordingly charge that Section 3 of said Act has not been complied with." The bill does not say whether the county solicitor, after he took office in September, 1954, has been paid any amounts out of the appropriation for the fiscal year of which 1954 is a part. Nor does it allege the manner in which Section 3 providing reimbursement of the expenses has been violated.

No doubt, upon reflection, solicitor for taxpayers will recognize that the averments stated do not furnish a basis for the rendition of any judgment against the defendant, County Solicitor.

 According to the allegations of the bill, there is an item in the 1955 budget of (1) $200 in favor of Tallent, Commissioner of Finance and Purchasing, for "Car Operation (County Car)"; and (2) one of $300 for "Operating expense, Car Operation (County Car)." The bill alleges that Maynard, the Commissioner of Welfare, "is the beneficiary of said appropriation;" and (3) an appropriation in an unspecified amount for Spangler, Commissioner of Highways and Public Works, "to reimburse the said Spangler for expenses incurred by him in the operation of an automobile." The taxpayers allege these appropriations to be unauthorized.

The 1937 Act authorizing the Commission form of Government for Knox County provided an annual salary of $7,500 for each of these Commissioners. We are not able to find any statute authorizing this appropriation for the furnishing of a car to these commissioners. It must, therefore, be concluded that the proposed appropriations are illegal. The rule is that counties have no authority other than that expressly given by statute or that necessarily implied from the provisions of such statute. *Burnett* v. *Maloney,* 97 Tenn. 697, 37 S. W. 689, 34 L. R. A. 541; *State ex rel. Citizens of Wilson County* v. *Lebanon & Nashville Turnpike Company,* 151 Tenn. 150, 268 S. W. 627.

A case directly in point with reference to the illegality of the items just mentioned is that of *Whitthorne* v. *Turner,* 155 Tenn. 303, 293 S. W. 147. The Quarterly Court undertook to allow the school superintendent $500 for traveling expenses in visting county schools. It was

held that the appropriation was not authorized, the presumption being that the salary paid the superintendent was intended to include all compensation for this service.

The bill seeks a judgment against each of these Commissioners for the amount paid each of them from the county treasury on account of similar appropriations in previous years. And also a judgment against each of them for the fair rental value of the county's car when in use by them.

This budget likewise contains an item of $200 under the heading "County Judge's office." The particular appropriation being described as "Car Operation (County Car)." Apparently, though it is very indefinitely stated, a judgment likewise is sought against the County Judge for sums in previous years paid him under this item or for the fair rental value of the County's car when used by him. For the reasons heretofore stated, this appropriation is likewise unauthorized.

The question, however, as to whether these commissioners and this County Judge should be held liable for sums received in previous years in reimbursement of expenses paid for official travel is indeed a question so close as to have given this Court much concern.

The Act creating the Commission Form of Government for Knox County, Chapter 183, Private Acts of 1937, provides that all county officials, commissions or boards shall requisition the purchasing agent "for the quantity and character of supplies, materials or properties needed or the needs of which are anticipated, and * * * he shall proceed to purchase the same and make delivery thereof" etc. It is said in the briefs in behalf of these officials that this provision of the statute authorized the furnishing, etc., of these automobiles to these officials, and the reimbursement to them of expenses incurred in operating

them on official business. While the Court cannot agree with that insistence, yet it cannot be said to be entirely illogical.

It was observed in *State* v. *Hobbs*, supra [194 Tenn. 323, 250 S. W. (2d) 553], that " 'parties may so deal with each other upon the faith of such a statute that neither may invoke the aid of the courts to undo what they themselves have done.' " The statute referred to in the quotation was unconstitutional. However, the same principal should apply perhaps to other statutes when the parties are dealing in good faith. At any rate, taking all circumstances into consideration, the Court is of the opinion that it would be inequitable now to allow a recovery on these items with reference to the use by these officials of a county car on official business, or for amounts paid as reimbursement of the expenses thereby incurred.

 Chapter 401 of the Private Acts of 1953 fixes the annual salary of the three County Election Commissioners at $600 per annum. There should, therefore, be an item in the 1955 budget of $1,800 to pay these salaries. But this item in this budget is $2,700, thereby appropriating $900 for the salary of each of the commissioners. The charge of the bill that this item is unauthorized other than to the extent of $1,800 must be sustained.

A judgment is sought against each of these commissioners for such amount paid to them out of the county treasury since the enactment of the 1953 Act in excess of the authorized salary of $600. There was no apparent authority to pay each of these commissioners any annual salary other than in the amount of $600 since the passage of the 1953 Act. It is difficult to believe that either of these commissioners could have reasonably concluded to the contrary in the face of such Act. According to the bill, when an inquiry was made of one of these commissioners

as to how he justified the appropriation of $900 rather than $600 to pay his annual salary, he replied that he could not justify it. The Chancellor's decree sustaining the demurrer of these Election Commissioners must be reversed and the demurrer overruled.

The two remaining items in the 1955 budget, the legality of each of which is challenged by the bill, is one of $500 "for official travel," and one of $1,768.14 for "Tuition, Elmwood School."

▇▇ The bill is well taken as to the item of $500 for "official travel." This language is too vague to convey any meaning to the taxpayers as to the use to which this $500 will be put. It, therefore, contravenes the rule that "taxpayers have the right to know for what purpose public funds are being appropriated." *Southern* v. *Beeler,* 183 Tenn. 272, 297, 195 S. W. (2d) 857, 868.

▇▇ The bill is not well taken as to the item of $1,768.-14. The taxpayers are informed that it is "Tuition, Elmwood School." The information contained by this legend will lead any taxpayer's investigation to a correct answer as to the purpose for which the appropriation is intended. There is not enough in the bill, however, to inform the Court as to whether or not it is illegal. In such a circumstance the Court cannot presume illegality.

▇▇ The decree of the Chancellor will be modified so as to order the 1955 budget prepared by the Board of County Commissioners of Knox County be amended in the following particulars: (1). The items providing funds for the annual salary of $6,000 to each of the three General Sessions Judges will be reduced so as to provide an annual salary of $4,800 to each; (2). The item for car operation or operating expenses of (a) $200 in favor of Commissioner Tallent and (b) $300 in favor of Commissioner Mayard and (c) the one (unidentified by the bill

as to amount) in favor of Commissioner Spangler, and (d) the one of $200 under the heading "County Judge's Office" will be stricken from the budget. (3). The item of $2,700, being $900 for the annual salary of each of the three Election Commissioners will be amended to read $1,800 so as to provide for an annual salary of $600 to each of the three County Election Commissioners. (4). The item of $500 for "official travel" will be stricken from the budget. An injunction to prevent payment of the items herein adjudged illegal is not necessary. It should be presumed that the county officials will not pay any such item subsequent to the announcement of this decision.

As so modified, the decree of the Chancellor will be affirmed and the cause remanded for answer by each of the three County Election Commissioners as to what amounts they have received in excess of $600 per annum since the enactment of Chapter 401 of the Private Acts of 1953. Let the costs in the Chancery Court up to and including the entry of this decree and in this Court be adjudged against Knox County for whose benefit this bill was filed, and who is the recipient of the benefits therefrom resulting.

## On Petition to Rehear.

Appellees, County Commissioners and County Judge, and appellant, the taxpayers, have filed petitions to rehear.

The Commissioners and County Judge by their petition to rehear insist most earnestly that this Court erred in holding that there is no authority to appropriate, or, therefore, to include in the 1955 budget items to pay or reimburse each of the three County Commissioners and

the County Judge for expenses incurred in operating an automobile while attending official duties.

In support of the insistence thus renewed on the petition to rehear, these petitioners first assert this:

"We submit that in the absence of an express statute permitting the county to pay travel expenses in connection with the performance of regular county business, the county still has the power to pay for travel which is incidental and necessary to the performance of the legitimate county business."

■■■ Considered on principle, the decisions of this State are directly contrary, as this Court views it, to that assertion. In *State ex rel. Vance* v. *Dixie Portland Cement Company,* 151 Tenn. 53, 60, 267 S. W. 595, 597, it is said:

"It is a settled policy of the state, determined by statute and judicial decree, that public officers can receive no fees or costs except as expressly authorized by law."

To the same effect is *State* v. *True,* 116 Tenn. 294, 311, 95 S. W. 1028; *Shelby County* v. *Memphis Abstract Co.,* 140 Tenn. 74, 84, 203 S. W. 339, L. R. A. 1918E, 939; *Henry* v. *Grainger County,* 154 Tenn. 576, 578, 200 S. W. 2; *Stone* v. *Town of Crossville,* 187 Tenn. 19, 24, 212 S. W. (2d) 678; and many others which might be cited. There are no decisions to the contrary.

■■■ This petition refers to *Peay* v. *Nolan,* 157 Tenn. 222, 7 S. W. (2d) 815, 60 A. L. R. 408, wherein it is held that the reasonable expenses of public officials in the performance of official duties properly may be paid out of public funds, in addition to the compensation received by these officials. The petition overlooks an important fact distinguishing that case from the one at bar. That distinction is that *Peay* v. *Nolan* is dealing with the power

of the Legislature with reference to expenses of State employees. The case at bar deals with the authority and liability of counties. As emphasized in *Burnett* v. *Maloney,* 97 Tenn. 697, 712-713, 37 S. W. 689, 693, 34 L. R. A. 541:

"Counties owe their creation to the statutes, and the statutes confer on them all the powers which they possess, prescribe all the duties they owe, and impress all the liabilities to which they are subject."

■ In addition to the general principles above stated, which this Court considers conclusive against the aforestated insistence, all precedent in this State, in so far as this Court can find, rejects the assertion that without a statute an appropriation to public officials may be made to "pay for traveling which is incidental and necessary to the performance of the legitimate county business."

In *Hope* v. *Hamilton County,* 101 Tenn. 325, 332, 47 S. W. 487, 488, in dealing with a kindred question, this Court said:

"The theory [and spirit] of all these laws is that in rendering services which should be done by members of these bodies, pertaining to their official position, they act simply in discharge of duties for which the statute provides compensation."

*Whitthorne* v. *Turner,* 155 Tenn. 303, 308, 293 S. W. 147, 149, directly rules the case at bar contrary to petitioners' insistence. In that case this Court observed that:

"The duty to visit schools, necessitating travel, is a duty imposed upon defendant as superintendent of schools" of Maury County.

\* \* \* \* \* \*

"* * * In performing this duty the defendant acted as superintendent, for which he was compen-

sated by the salary fixed by the county court * * *.''

The holding in *Whitthorne* v. *Turner*, supra, is in keeping with the public policy of this State as always heretofore practiced. That such is the case was noticed in *State ex rel. Vance* v. *Dixie Portland Cement Company,* 151 Tenn. 53, 60, 267 S. W. 595, hereinbefore quoted. Likewise, it is in conformity with the general view expressed by the Courts, according to the text of 67 C. J. S., Officers, Sec. 91, p. 329, as follows:

"The right of an officer to compensation for expenses incurred by him in the performance of an official duty must be found in a provision of the constitution or a statute conferring it either directly or by necessary implication, and the officer cannot recover compensation additional to the compensation fixed by statute for such expenses.''

The petition says, however, that authority for the appropriation is found in the following provision of Section 5 of Chapter 183 of the Private Acts of 1937:

"It shall be the duty of the Commissioner of Finance, acting as Purchasing Agent, to purchase all the supplies, materials or properties of every kind and character, including insurance on county property, used or consumed by the county or any of its officers, agents, employees, boards or commissions, including all county officers * * * all materials and supplies or equipment used in connection with county highways, roads and bridges, the County Board of Commissioners and all other officials, Boards or Commissions of said county where any such supplies, materials or properties are paid for out of public funds belonging to said county.''

In some States a liberal construction is given to statutes with reference to the power of counties. In Tennessee

the rule of strict construction applies. *Burnett* v. *Maloney,* supra, 97 Tenn. at page 716, 37 S. W. 689. With this rule in mind, Section 5 above quoted will be condensed so as to simplify solution of the question as to whether this section gives Knox County the authority to pay, in addition to their salaries, the expenses incurred by its officials in performing their duties. Condensed, but not so as to take it out of context, this Section 5 invoked by the petitioners is as follows:

"It shall be the duty of the commissioner of finance, acting as purchasing agent, to purchase all materials and supplies and equipment * * * where any such supplies are paid for out of public funds belonging to said County."

It is clear then that this provision only purports to authorize the purchasing agent to procure those materials and supplies that are by law to be paid for with county funds. If there is no statute authorizing a particular item to be so paid for, then this provision does not authorize the purchasing agent to procure and pay for it. There is no such statute in so far as the Court is aware. Nor does the petition mention one, other than the aforesaid Section 5.

It is next insisted that this Court erred in holding that no appropriation is authorized by the item of $500 in the budget which is purported to be for "official travel." The taxpayers are entitled to know whether an item for which they are required to pay a tax is legal. The recitation in the budget that this item is for "official travel" does not convey that information. The Court is satisfied that its previous ruling on the question is correct.

After holding that the items in the 1955 budget for operating expenses of a county car incident to travel in the performance of the official duties of the County Judge

and each of the three County Commissioners called for an illegal appropriation, this Court proceeded to discuss the taxpayers' prayer for recovery in favor of the County of such sums as had been expended in previous years either directly or by way of reimbursement to these officials for expenses so incurred.

After observing that "perhaps" the principle re-enunciated in the Hobbs case, 194 Tenn. 323, 250 S. W. (2d) 549, is applicable, it was said that "At any rate, taking all circumstances into consideration" this Court is of the opinion that the prayer for recovery should be disallowed. However, in so concluding it was observed that the question thus made is "so close as to have given this Court much concern."

The petition of the taxpayers to rehear seeks a reconsideration of the Court's holding on this question. That petition asserts that this holding is not supported by the principle which controls the Hobbs case, and that the principle of estoppel does not apply.

In the Hobbs case the payments sought to be recovered were paid under a statute which expressly and explicitly directed such payments. That statute turned out to be unconstitutional, but there was applied, following precedent, the principle that a statute is presumed to be legal until the Court holds otherwise, and that these payments were made while that presumption existed.

But there is no statute, constitutional or unconstitutional, authorizing payment of the expenses for operating the county cars in the instant case. Hence, the taxpayers' petition to rehear is correct in its assertion that the principle applied in the Hobbs case on this score is not applicable.

This Court is keenly aware of obstacles in the way of adjudging that these county officials should not be made

to account for county funds so expended. Nevertheless, on the whole, it remains of the opinion that perhaps the more equitable conclusion is that under the circumstances these officials should not be called upon to account for these expenditures.

"Allowances for expenses are something different from salary." 43 American Jurisprudence, Section 368, page 154. And, whatever may be the differences between the Quarterly Court and these commissioners as to the 1955 budget, there is no allegation of a disagreement prior thereto. The situation we have is that the County Commissioners proposed by inserting it in the budget that the Quarterly Court agree to the payment of the expenses of operating county cars when used by these officials in the performance of their official duties. The Quarterly Court so agreed. Though illegal, it was plausible, and in keeping with a practice often pursued under statutory authority, whereby it is recognized as not being an inequitable practice. Acting under that agreement, the cars were used for the county's benefit. The contract has been executed, and an accounting on items of this character will be difficult. We feel, therefore, that the more equitable action under all the circumstances peculiar to this case is to deny the right of the County to recover for the sums so expended. We understood counsel for these taxpayers, in the oral argument in this case, to express doubt as to the legal right of the County to restitution.

Both petitions to rehear will be denied.